[No. 28698.   Department One.   August 3, 1942.]

EMILIUS DUUS, *Respondent,* v. THE TOWN OF EPHRATA, *Appellant.*[1]

[1]Reported in 128 P. (2d) 510.

*William M. Clapp* and *James F. Wickwire,* for appellant.

*Crollard & O'Connor* and *Clinton & Southard,* for respondent.

MAIN, J.—This action was brought for injunctive relief. The cause was tried to the court without a jury, and resulted in a judgment giving the plaintiff the relief which he sought, and from this judgment the defendant appealed.

In 1915, L. H. Pruitt and Emma Pruitt, his wife, owned a farm of about one hundred and twenty acres, adjoining the town of Ephrata, in Grant county, a small part of which was situated within the corporate limits of the town. The Pruitts also owned the water system that supplied the town and its inhabitants with water, which system derived its supply from five springs located upon the farm.

March 30, 1915, Mr. and Mrs. Pruitt, by contract, sold the water system to one F. P. Gover. After describing the plant in detail, this contract provides that the purchaser shall have

"  . . . further right of way and easement to construct additional reservoirs, dig a well; and to develop additional water to be used in connection with the said water system of the said Town;  . . . "

After making a certain exception or reservation, the contract contains this:

"It is also reserved and excepted to first parties [Mr. and Mrs. Pruitt] the present pipe lines to their buildings and the water that would flow therein to be used only for domestic purposes and watering of stock and garden and lawn purposes. And first parties [Mr. and Mrs. Pruitt] shall not be charged therefor; but shall maintain the same at their own cost."

There is a further provision in the contract that the purchaser shall not assign the contract or any part thereof without the written consent of the first parties.

The water from the springs, above mentioned, was collected in a concrete and plank box, from which it was piped to a reservoir, and from the reservoir it was piped to the town where it entered the distributing system. During the dry years following 1916, the springs began to fail and did not supply a sufficient amount of water to meet the requirements of the inhabitants of the town of Ephrata. Thereafter, a well was dug, which supplied the water that was piped to the town. After the well was dug, the flow from the springs was reduced somewhat, and, ultimately, very little water came therefrom.

In 1920, the town acquired the water system from Gover, and thereafter operated it.

Upon the farm, there were two houses, one referred to as the upper house, and the other, as the lower. The upper house was the one in which Mr. and Mrs. Pruitt resided at the time, and was outside the corporate limits of the town. The lower house, together with about one acre of land upon which it stood, was within the corporate limits of the town. Mr. Pruitt died in the year 1925, and thereafter the farm was conveyed to one Ben Harvill, subject to the rights of the town which it had acquired from Gover. From this deed was excepted the one acre of ground within

the corporate limits of the town, and the respondent, Emilius Duus, now owns this acre and resides thereon.

In 1939, the town purchased about seventeen acres additional land from Harvill, constructed a new reservoir, and installed a new pipe line. One of the pipes of the distributing system of the town, about three-quarters of an inch in diameter, while not entering the acre of land, came to its boundary, and apparently was installed to supply that acre with water. After the new reservoir was constructed and the new pipe line installed, the town installed a meter on the pipe leading to the respondent's property, and demanded the right to collect rent therefrom. Up to this time, the town had not collected, or attempted to collect, any water rent from anyone that occupied the premises.

From 1915 to 1919, the granddaughter of Mr. and Mrs. Pruitt lived in the lower house and used water from the system. A son of Mr. and Mrs. Pruitt also resided upon the one acre tract for a period of ten years prior to 1931. During this period, he received and used water for lawn and garden, as well as for household purposes. The water from the system was also piped to the upper house where Mr. and Mrs. Pruitt resided, and they used it for household purposes, lawn, and garden.

The first question is whether the respondent had the right, under the exception in the contract of sale to Gover, to use the water from the system without charge. It will be observed that, in that contract, it is provided that it is

"  . . . reserved and excepted to first parties the present pipe lines to their buildings and the water that would flow therein to be used only for domestic purposes and watering of stock and garden and lawn purposes."

It will also be noted that the contract does not limit the right, under the exception, to the upper building, but says "buildings," and, as already seen, there was a building upon the acre that was within the corporate limits of the town.

■ The terms "reservation" and "exception," as used in connection with conveyances of land, although distinguishable, are quite commonly used as interchangeable terms, and the meaning intended must be determined by reference to the subject matter and the surrounding circumstances. An exception or reservation, as thus used, does not mean the same thing. A reservation is a creation in behalf of the grantor of a new right issuing out of the thing granted. On the other hand, an exception operates to withdraw some part of the thing granted which otherwise would pass to the grantee under the general description.

In 16 Am. Jur. 607, § 298, it is said:

"The terms 'reservation' and 'exception' as used in connection with conveyances of land, although distinguishable, are quite commonly used as interchangeable terms, and the meaning intended must be determined by reference to the subject matter and the surrounding circumstances. An 'exception' and a 'reservation' as thus used do have this in common—namely, that both subtract or deduct from the thing granted, narrowing and limiting what would otherwise pass by the general words of grant. An analysis of these terms, however, reveals an important distinction. A reservation is the creation in behalf of the grantor of a new right issuing out of the thing granted, something which did not exist as an independent right before the grant. On the other hand, an exception operates to withdraw some part of the thing granted which would otherwise pass to the grantee under the general description, which was in esse at the time of the conveyance and which until such con-

veyance and the severance thereby was comprised in the thing granted."

Inasmuch as the contract uses both words, we think the word "excepted" cannot be disregarded, and that the right to use the water for the buildings upon the farm and for the other purposes mentioned at no time passed to the town of Ephrata. As above appears, the town claims through the Gover contract, and the respondent claims through the exception provision. His title is directly traceable back to that provision. From this it follows that the town did not have the right to collect water rent from him for any of the purposes mentioned in the contract for which it could be used. The fact that a well was dug and the water came from that rather than direct from the springs, is not material, because the Gover contract expressly gave the right to dig a well and develop additional water to be used in connection with the water system.

If, however, the respondent should convert the acre of ground into a truck garden, or use it for producing crops of any kind for the market, a different question would be presented, upon which we here express no opinion.

It appears to us that the holding in the case of *de Weber v. Cassiday,* 27 Cal. App. 703, 151 Pac. 19, is not helpful to the town's contention in this case, because the facts there were not analogous.

The town makes the further contention that to fail to collect the rent would constitute a preference, which is prohibited by Rem. Rev. Stat., §§ 10366 and 10367 [P. C. §§ 5557 and 5558]. Those sections are not applicable to the facts in this case, because the respondent's right to use the water was derived from an exception in the contract with Gover, and the re-

spondent acquired title to the water to the extent that he had a right to use it for the purposes mentioned in the contract.

The judgment will be affirmed.

ROBINSON, C. J., STEINERT, and BLAKE, JJ., concur.

MILLARD, J., dissents.

### ON REHEARING.
[*En Banc.* March 4, 1943.]

PER CURIAM.—Department One of this court filed its opinion in this case August 3, 1942, in which it affirmed the judgment of the trial court. The opinion states that,

"If, however, the respondent should convert the acre of ground into a truck garden, or use it for producing crops of any kind for the market, a different question would be presented, upon which we express no opinion."

The appellant's petition for a rehearing was granted.

This is an equitable action, and one in which the court granted an injunction. In order that the relief be complete, and in view of representations of an excessive use of water for irrigation purposes, it is deemed advisable, in reaffirming the judgment, to clarify further respondent's rights to the use of free water.

While we are unable from the present record to do this in terms of the number of gallons of water, we will state the rule by which they may be determined. The clause in the contract which defines respondent's rights is as follows:

"It is also reserved and excepted to first parties the present pipe lines to their buildings and the water that would flow therein to be used only for domestic purposes and watering of stock and garden and lawn purposes. And first parties shall not be charged therefor; but shall maintain the same at their own cost."

We will construe this language in the light of the circumstances existing at the time the contract was drawn, and find that the following limitations were intended by the parties:   The pipes intended to be used for respondent's benefit were those then in the ground or those replaced and maintained by the respondent; the buildings to be served were the then existing buildings or their replacements; the domestic purposes provided for are the equivalent of household purposes; the garden for which water is to be furnished free must be grown exclusively for the use of the occupant householder; the extent of the lawn must be reasonably limited by the standards of the community and prior use; the stock to be watered must be grown or maintained upon the premises.

In short, respondent may not convert the water furnished by the appellant from private to commercial, industrial, or irrigation uses.

The case is remanded to the trial court for the purpose of ascertaining the amount of water which respondent may use and amending its final decree in conformity with its findings.