[No. 9413–8–III.  Division Three.  August 8, 1989.]

RICHARD H. RUSSELL, ET AL, *Respondents,* v. EARL D. GARVER, ET AL, *Appellants.*

*James Scott* and *Smith, Scott & Mazzola,* for appellants.

*William Almon* and *Almon, Berg & Adams,* for respondents.

SHIELDS, J.—The dispute in this case concerns the ownership of a strip of land on which an access road lies. Richard and Linda Russell moved for summary judgment quieting title in them. The Superior Court granted their motion. We reverse and remand.

The facts involve a lengthy chronology of events and numerous deeds. In 1952, Robert and Lauramay Miller owned a parcel of land otherwise known as lots 19, 26, 27 and portions of lots 20 and 25, as well as the east half of lot 34. Their family home was built on lot 27. The only access to their home was a road which ran along the west side of the east half of lot 34.

The Millers then sold the land to Dwight and Gladys Danner pursuant to a real estate contract. In 1957, prior to the real estate contract having been fulfilled, the Dwight Danners assigned all their rights in the real estate contract to their son, Arthur. In 1961, again prior to the fulfillment of the real estate contract, Arthur Danner and the Millers quitclaimed the east half of lot 34 back to the Dwight Danners. On the deed, the description of the land conveyed read:

The South 658.6 feet of the East half of the South east [sic] quarter, Southeast quarter Southeast quarter of Section 2, Township 14, North Range 18. EXCEPT South 30 feet for road and EXCEPT road along the west side thereof.

The Dwight Danners then built their own home on the east half of lot 34, and established their own driveway from the main road to their home. They did not use the road which ran along the west side of the east half of lot 34, which connected the home on lot 27 (in which Arthur Danner now resided) with the main road.

At or prior to this time, a fence was erected on both sides of the road which ran along the west side of the east half of lot 34, and gates were placed at each end. Only Arthur Danner used the road, as access to his house on lot 27.

In 1965, the real estate contract between Arthur Danner and the Millers was fulfilled. Pursuant to that fulfillment, the Millers conveyed title to the parcel by a warranty deed which read:

> The Northwest quarter of the Northeast quarter of the Southeast quarter and the East half of the East half of the Southeast quarter, EXCEPT the West half of the Southeast quarter of the Southeast quarter of the Southeast quarter and EXCEPT that part of the North 132 feet of the East half of the Northeast quarter of the Southeast quarter of the Southeast quarter lying East of the West 24 feet thereof, EXCEPT right of way for roads, and EXCEPT the South 658.6 feet of the East half of the Southeast quarter of the Southeast quarter of the Southeast quarter, ALL in Section 2, Township 14, North, Range 18 E.W.M.

The deed from the Millers to Arthur Danner did not transfer any interest in the east half of lot 34, because the Millers and Arthur Danner had previously deeded that piece of land to the Dwight Danners in 1961. However, the deed from the Millers to Arthur Danner failed to note that when the east half of lot 34 was deeded to the Dwight Danners, the road along the west side was *excepted* therefrom.

Later in 1965, Arthur Danner conveyed his property to Earl and Dorothy Garver. His conveyance to the Garvers also excepted the east half of lot 34, which had been transferred to the Dwight Danners, but failed to note that the road along the west side was excepted from that transfer to the Dwight Danners.

To further confuse the issue, in 1969 the Dwight Danners sold the east half of lot 34. Their conveyance did not note that the road along the west side was excepted from their transfer. After a series of owners, the former Dwight Danner property was purchased by the Russells.

From 1965 to approximately 1985, the Garvers have used the road exclusively as access to their home on lot 27. They have maintained the fences and gates which entirely enclose the road. They have graveled and graded the road and provided snow removal. The utility lines along the road in question run to the Garver home.

The issue of law on these undisputed facts is the ownership of the road along the west side of the east half of lot 34. Resolution of that issue, however, requires an inquiry into the intent of the Millers and Arthur Danner at the time the conveyance to the Dwight Danners was made. That inquiry involves an issue of fact.

■ The trial court relied on language found in *Duus v. Ephrata,* 14 Wn.2d 426, 430–31, 128 P.2d 510, 134 P.2d 722 (1942) (quoting 16 Am. Jur. *Deeds* § 298, at 607 (1938)):

> "The terms 'reservation' and 'exception' as used in connection with conveyances of land, although distinguishable, are quite commonly used as interchangeable terms, and the meaning intended must be determined by reference to the subject matter and the surrounding circumstances. An 'exception' and a 'reservation' as thus used do have this in common—namely, that both subtract or deduct from the thing granted, narrowing and limiting what would otherwise pass by the general words of grant. An analysis of these terms, however, reveals an important distinction. A reservation is the creation in behalf of the grantor of a new right issuing out of the thing granted, something which did not exist as an independent right before the grant. On the other hand, an exception operates to withdraw some part of the thing granted which would otherwise pass to the grantee under the general description, which was in esse at the time of the conveyance and which until such conveyance and the severance thereby was comprised in the thing granted."

Based on the above language, the trial court found the word "EXCEPT" in the 1961 quitclaim deed from the Millers and Arthur Danner to the Dwight Danners operated

as an "exception" rather than as a creation of a "reservation", and concluded the deed conveyed fee title to the Dwight Danners subject only to the Millers and Arthur Danner retaining a nonexclusive easement to use the road. This was an incorrect conclusion; a nonexclusive easement creates a new right in the grantor which did not exist at the time of the grant and is a reservation, not an exception.

The difference between a "reservation" and an "exception" is further explained in 6 G. Thompson, *Real Property* § 3090, at 772 (1962 repl.): "A reservation is the creation in behalf of the grantor of a new right, that is, an easement issuing out of the thing granted, something which did not exist as an independent right before the grant." (Footnote omitted.) Thompson, at 776, further states: "[W]hereas an exception operates upon the description and withdraws the accepted [*sic*] property from the description." (Footnote omitted.) But,

> [t]he parties' intention, not the language used, is the dominating factor, and the circumstances existing at the time of the execution of the deed, the parties' situation, and the subject matter must be considered. A technical misnomer does not operate to defeat an attempted reservation or exception. Technically a reservation in a deed is a newly created right, which the grantee impliedly conveys to the grantor, while an exception is something withheld from the grant which would otherwise pass as a part thereof.
>
> If the intent of the deed is to vest in the grantor some new right or interest which did not before exist in him, it is a reservation; but if it was the plain purpose of the parties not to reserve a new right which should vest in the grantor, but to recognize and except from the grant an existing right which would otherwise pass to the grantee, it is the purpose of the parties to create an exception, whatever may be the language used. Whatever is excluded from a grant by an exception remains in the grantor as of his former right or title.

(Footnotes omitted.) Thompson, at 778–79. Because the intention of the parties was not recognized as an issue of fact by the trial court, summary judgment was granted in error.

In the present case, if the Millers and Arthur Danner used the words "EXCEPT road along the west side

thereof", intending to create an easement, *i.e.*, a "new right", then what they intended was a "reservation", *not* an "exception". Fee title in the road in that case would pass to the Dwight Danners and subsequently to the Russells. The existence of the fencing along either side of the road, and the exclusive use of the road by Arthur Danner after the transfer, however, is inconsistent with such an intent.[1]

If the Millers and Arthur Danner used the words intending to except from the conveyance their existing right in the land, then what they intended was an "exception". Fee title in the road in that case would remain with them. The fencing along either side of the road, and the exclusive use of the road by Arthur Danner, is consistent with such an intent. However, if fee title to the road remained with the Millers, their omission of reference to the road in their 1965 fulfillment deed to Arthur Danner in effect failed to convey title to the road to Arthur Danner, and consequently to the Garvers, so that the fee title to the road remains with the Millers.

The judgment of the Superior Court is reversed and the case remanded for trial to resolve these issues.

MUNSON, A.C.J., and GREEN, J., concur.

---

[1]No assertion of adverse possession was made by the Garvers at trial or on appeal. On remand, if it is found that the Garvers received only a nonexclusive easement by way of reservation, the fencing and gating of the road after the conveyance by the Millers and Arthur Danner to the Dwight Danners raises an issue of fact whether Arthur Danner and the Garvers effectively adversely possessed the land. If so, the Garvers' claim to the land would be superior to any right the Millers or the Russells may have, regardless of the intent of the parties to the 1961 quitclaim deed.