

COURT OF APPEALS
STATE OF WASHINGTON

2014 OCT 13 AM 8: 53

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| R. LANCE HADDON and CAROL A. PUTNAM, husband and wife, | ) ) ) |
| | DIVISION ONE |
| Appellants, | No. 70454-1-I (consol. with No. 70550-4-I) |
| v. | |
| JOOST R. CLAEYS and AMY K. PREZBINDOWSKI, husband and wife; and SHELDON HAY, an individual of unknown marital status, | UNPUBLISHED OPINION |
| Respondents. | FILED: October 13, 2014 |

DWYER, J. — We are presented with the question of whether a grantor who conveyed title to real property "subject to" an invalid easement, in doing so, exhibited the requisite intent to create a valid easement in the statutory warranty deed. In this case, we conclude that the grantor did not intend to create an easement but, rather, intended to exclude that which she mistakenly believed to be a valid easement from the warranty against encumbrances. Because the trial court, in granting partial summary judgment, ruled that a valid easement came into existence by virtue of the conveyance made "subject to" the invalid easement, the grant of partial summary judgment is reversed and this matter is remanded to the trial court for further proceedings.

I

In 1981, a short plat of a property in Carnation, Washington created four separate lots. Lots 1 and 2 are bordered by a county road. Lots 3 and 4 are located behind Lots 1 and 2. However, Lots 3 and 4 are provided legal access to the public road abutting Lots 1 and 2 by "Tract X"—a tract that traverses Lots 1 and 2.

In 2005, Dorothy Church, a non-party, acquired title to Lots 1, 3, and 4. Lot 1 contained an on-site sewage system (OSS). Certain obligations with regard to the OSS were imposed upon the owner of Lot 1, including an obligation to "Protect the OSS area including the reserve area from: (a) Cover by structures or impervious material; (b) Surface Drainage; (c) Soil compaction, for example, by vehicular traffic or livestock; (d) Damage by soil removal and grade change."

On August 14, 2006, Church purported to grant to herself an easement across Lot 1 for the benefit of Lots 3 and 4. This easement, as granted, ran directly over a portion of the septic drain field that was located on Lot 1. Church's attempt to create an access easement is recreated, in pertinent part, below:

ACCESS and UTILITY EASEMENT
and
JOINT MAINTENANCE AGREEMENT

The **Grantor, Dorothy Church**, as owner of the **Lot 1 of King County Short Plat No. 980005R, Recording No. 8106190609, in King County, Washington, tax parcel no. 272505-9049**, does hereby grant to **Dorothy Church**, her heirs, successors and assigns,

an easement for ingress, egress and utilities over, under, and across the following described property:

**The West thirty (30) feet of said Lot 1.**

for the use and benefit of the following described property and/or any portion thereof: **Lots 3 and 4 of said King County Short Plat No. 980005R, Recording No. 8106190609, tax parcel nos. 272505-9050 and 272605-9051.**

Six months later, Church conveyed Lot 1 to R. Lance Haddon and Carol Putnam (collectively "appellants") by statutory warranty deed. The conveyance was made subject to "ATTACHED EXHIBIT 'A.'" Exhibit "A" made reference, among other things, to the easement that Church had purported to create on August 14, 2006.

### Exhibit "A"

<u>Subject to:</u>

. . . .
Easement and the terms and conditions thereof:
Grantee:           Dorothy Church
Purpose:           Access, utility, and joint maintenance
Area affected:     the west 30 feet of Lot 1
Recorded:          August 21, 2006
Recording No.:     20060821000487

On December 2, 2010, Joost Claeys and Amy Prezbindowski took title to Lots 3 and 4 by quit claim deed in lieu of foreclosure. The quit claim deed made no mention of Church's easement.

Thereafter, the appellants filed a complaint against Claeys, Prezbindowski, and Sheldon Hay (collectively "respondents") in King County Superior Court. The appellants contended that the easement that Church had recorded over Lot 1 was invalid and they requested that the trial court declare the

-3-

easement to be void and to quiet title in them. They also sought an award of damages and a permanent injunction prohibiting the respondents from using the easement.

The respondents counterclaimed in an effort to have the easement enforced.

Subsequently, both parties moved for partial summary judgment. On February 6, 2012, the trial court denied the appellants' motion, granted the respondents' motion, and ruled that the easement was valid. In doing so, the trial court held, in pertinent part, that although Church had failed initially in her attempt to create a valid easement, the easement had become valid when Church conveyed Lot 1 "subject to" the invalid easement.

> [T]he Court concludes that the Access and Utility and Joint Maintenance Agreement executed by Dorothy Church and recorded August 21, 2006 under King County recording number 20060821000487 (The Easement) is valid. Although the easement was not valid when recorded in August 2006 because Ms. Church owned both Lot 1 and Lot 3, the easement became valid when Ms. Church conveyed Lot 1 to the Plaintiffs "subject to" the easement. This act constituted a valid reservation of rights in the easement to Ms. Church, who then owned Lot 3.

The matter then proceeded to trial where issues regarding the scope of the easement were resolved. In entering final judgment, the trial court made findings of fact and drew conclusions of law. Several of its findings are relevant to the resolution of this appeal.

The first pertinent finding was that Lots 3 and 4 were provided with legal access to a public road when the original property was subdivided in 1981.

> Short Plat 980005 was recorded in 1981 . . . . It created 4 Lots; Lots

-4-

1 and 2 fronting the public road and Lots 3 and 4 behind. Legal access to Lots 3 and 4 was provided through "Tract X" identified on the plat map, 30 feet in width and running between Lots 1 and 2 to the intersection with Lots 3 and 4. Lots 3 and 4 are delineated on the plat as "Nonbuilding Lots."

Findings of Fact 2.

The second pertinent finding was that the easement that Church had attempted to create had never been used as such.

There was no apparent use of the Easement area at the time it was granted or at any time since. No vehicular traffic has ever crossed the Easement area.

Findings of Fact 12.

The appellants appeal from the trial court's grant of partial summary judgment and from entry of its final order and judgment. On appeal, however, the central issue is whether the trial court, in granting partial summary judgment, erred by ruling that a valid easement emerged from the conveyance made "subject to" the invalid easement.

II

While the trial court concluded that Church's conveyance of Lot 1 "subject to" the invalid easement resulted in a valid easement, it explicitly rejected the respondents' position that Church's initial attempt to record an easement was successful. Nevertheless, on appeal, the respondents contend that the trial court's grant of partial summary judgment may be affirmed by holding, contrary to the trial court's conclusion, that Church's initial attempt to create an easement was successful. We disagree.

We review an order of partial summary judgment de novo and engage in

-5-

the same inquiry as the trial court. <u>Woo v. Fireman's Fund Ins. Co.</u>, 161 Wn.2d 43, 52, 164 P.3d 454 (2007). Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

As a general rule, "[o]ne cannot have an easement in his own property." <u>Coast Storage Co. v. Schwartz</u>, 55 Wn.2d 848, 853, 351 P.2d 520 (1960). Nevertheless, the respondents argue that a valid easement comes into existence when granted over separate lots in common ownership, so long as the easement is granted "in anticipation of sale" of one of the lots. The respondents invoke the doctrine of merger, along with its well-established exceptions, in an effort to support their novel theory. However, the doctrine of merger is inapt.

The doctrine of merger directs that when a dominant and a servient estate come into common ownership any easements affecting the estates are extinguished. <u>Radovich v. Nuzhat</u>, 104 Wn. App. 800, 805, 16 P.3d 687 (2001) (citing RESTATEMENT (FIRST) OF PROPERTY § 497 cmt. a (1944)). As explained in the Restatement, in order for the doctrine of merger to be implicated, there must be two tracts of land in separate ownership that subsequently come into common ownership.

> To assume the existence of an easement appurtenant to land *there must be presupposed two tracts of land in separate ownerships*, a dominant and a servient tenement. *If the two tracts come into common ownership* they cannot continue to be dominant and servient, and the easement appurtenant ceases to exist because, though the privileges of use once authorized by it still exist, they are no longer incidental to the ownership of the dominant tenement but have become incidents of the ownership of what was formerly the servient tenement. By virtue of such ownership, the uses which

were authorized by the easement may still be made, but the easement, as such, is extinguished.

RESTATEMENT (FIRST) OF PROPERTY § 497 cmt. a (emphasis added).

However, because the doctrine of merger is disfavored, exceptions to its application have been created. Radovich, 104 Wn. App. at 805. These include the following:

> "[T]he courts will not compel a merger of estates where the party in whom the two interests are vested does not intend such a merger to take place, or where it would be inimical to the interest of the party in whom the several estates have united, nor will they recognize a claim of merger where to do so would prejudice the rights of innocent third persons."

Radovich, 104 Wn. App. at 805 (quoting Mobley v. Harkins, 14 Wn.2d 276, 282, 128 P.2d 289 (1942)).

Radovich, as well as the authorities upon which it relies, recognizes an order of events. Two tracts of land in separate ownership—one burdened and one benefited by an easement—are united in common ownership. Those facts are not present here. Instead, two tracts in common ownership were decoupled. Consequently, the doctrine of merger—including the exceptions to its application—is inapposite and, hence, we decline to affirm the trial court's grant of partial summary judgment on the basis of the respondents' novel theory.

III

Turning to the appellants' first and only contention on appeal, they contend that the trial court erred by concluding that Church reserved to herself a valid easement in the deed by which she conveyed Lot 1. This is so, they assert, because Church's conveyance made "subject to" her invalid easement was an

-7-

attempt to exclude that which she mistakenly believed to be a valid easement from the warranty against encumbrances. We agree.

"Generally, when construing a deed, the intent of the parties is of paramount importance and courts must ascertain and enforce such intent." Wash. State Grange v. Brandt, 136 Wn. App. 138, 145, 148 P.3d 1069 (2006). "[A]ny words which clearly show the intention to give an easement . . . are sufficient to effect that purpose, providing the language is sufficiently definite and certain in its terms." Beebe v. Swerda, 58 Wn. App. 375, 379, 793 P.2d 442 (1990). A grantor may create an express easement by including in the statutory warranty deed what is known as a "reservation" of rights: "'A reservation is the creation in behalf of the grantor of a *new right* issuing out of the thing granted, *something which did not exist as an independent right before the grant.'*" Duus v. Town of Ephrata, 14 Wn.2d 426, 430, 128 P.2d 510, 134 P.2d 722 (1942) (emphasis added) (quoting 16 AM. JUR. Deeds § 298, at 607 (1938)).

Usually, the words "subject to" are included in a deed to denote restrictions of record that the grantor intends to exclude from warranty of title. See 7 THOMPSON ON REAL PROPERTY § 60.03(a)(7) (2d Thomas ed. 2006); see also von Meding v. Strahl, 319 Mich. 598, 609, 30 N.W. 2d 363 (1948) ("subject to all easements" in a conveyance means "subject to all *valid* easements"). But see Beebe, 58 Wn. App. at 379-82 (holding that the words "subject to," when accompanied by additional relevant language and circumstances, may indicate an intent to create an express easement in the deed).

As part of a conveyance of real property by statutory warranty deed, a

-8-

grantor must covenant that, among other things, title is free of encumbrances. Mastro v. Kumakichi Corp., 90 Wn. App. 157, 162, 951 P.2d 817 (1998); cf. Hebb v. Severson, 32 Wn.2d 159, 167, 201 P.2d 156 (1948) (identifying an easement as a type of encumbrance on real property).

The language of the deed and the circumstances surrounding the conveyance of Lot 1 disclose that Church intended to exclude that which she mistakenly believed to be a valid easement from the warranty against encumbrances. Church conveyed Lot 1 "subject to" an easement that carried the same recording number, date, and description as the invalid easement recorded by Church in August 2006. This alone is potent evidence of Church's intent. Additionally, the respondents fail to identify any surrounding circumstances— such as evidence that Church was aware that her initial attempt to grant to herself an easement over her own property was ineffectual—that would suggest an intent by Church—contrary to the language of the deed—to reserve to herself an easement in the deed. Considered in concert, the language of the deed and the circumstances surrounding the conveyance indicate that Church was attempting to exclude that which she mistakenly believed to be a valid easement from the warranty against encumbrances—not that she was attempting to create a "new right" in the parcel. Cf. Duus, 14 Wn.2d at 431. The trial court erred by ruling otherwise.

IV

Notwithstanding the trial court's error, the respondents next contend that we may affirm the trial court's grant of partial summary judgment on the basis of

-9-

there being established respondents' right to an "implied easement" over the area in dispute. Where, as here—according to the respondents—there was unity of title, a subsequent separation, and a reasonable degree of necessity for the easement after the separation, an implied easement should be found. We disagree.

"Easements by implication arise by intent of the parties, which is shown by facts and circumstances surrounding the conveyance." Roberts v. Smith, 41 Wn. App. 861, 864, 707 P.2d 143 (1985). The factors relevant to establishing an implied easement are (1) former unity of title and subsequent separation, (2) prior apparent and continuous quasi easement for the benefit of one part of the estate to the detriment of another, and (3) a certain degree of necessity for the continuation of the easement. Adams v. Cullen, 44 Wn.2d 502, 505, 268 P.2d 451 (1954); MacMeekin v. Low Income Hous. Inst., Inc., 111 Wn. App. 188, 195, 45 P.3d 570 (2002). Unity of title and subsequent separation is the only absolute requirement. Roberts, 41 Wn. App. at 865. The other two factors are "aids in determining intent to create an implied easement." Roberts, 41 Wn. App. at 865.

Here, there was unity of title and a subsequent separation. Hence, the first factor is satisfied. However, analysis of the second and third factors militate against the respondents' contention.

With regard to the second factor, the respondents do not even assert that a "quasi easement" exists. A "quasi easement" refers to the situation "which may arise between two pieces of land owned by the same person, when the enjoyment by one piece of a right in the other would be a legal easement, were

the pieces owned by different persons." Adams, 44 Wn.2d at 504. Even had the respondents asserted the existence of a "quasi easement," however, the trial court's factual finding that "[t]here was no apparent use of the Easement area at the time it was granted or at any time since,"[1] forecloses a conclusion in favor of the respondents on this question.

With regard to the third factor, the respondents contend that a certain degree of necessity exists for the easement. This is so, they maintain, because Lots 3 and 4 are landlocked. To the contrary, the trial court's finding that "Tract X" provides Lots 3 and 4 with legal access to a public road forecloses adoption of the respondents' position. In view of the trial court's factual finding, the respondents have failed to establish the requisite necessity for an additional easement.[2]

Considering that the invalid easement had never been used and that Lots 3 and 4 had been granted legal access to a public road, we reject the suggestion that the parties intended for an easement to be created by implication and decline to affirm the trial court's grant of partial summary judgment on this basis.

The grant of partial summary judgment is reversed and this matter is remanded to the trial court. On remand, a determination with regard to the appropriate relief, including damages (if any), to be granted to the appellants should be made.

---

[1] Findings of Fact 12.

[2] Moreover, the third factor calls for an evaluation of the necessity for the *continuation* of the easement. This plainly refers to a continuation of the *use* of the easement. Here, where no such use ever took place, the "use" could not be "continued."

-11-

Reversed.

We concur:

_Dwyer, J._

_Lau, J._

_Becker, J._