[No. 22363. Department One. July 8, 1930.]

PEARL M. MOORE, *Appellant,* v. N. B. CLARKE *et al.,*
*Respondents.*[1]

[1]Reported in 289 Pac. 520.

*James R. Chambers,* for appellant.

*Wright & Catlett,* for respondents.

PARKER, J.—The plaintiff, Mrs. Moore, seeks recovery of the amount of installments paid by her to the defendant Clarke, as selling agent for the defendant Seattle Title Trust Company, a corporation, upon her contract with that company for the sale to her of lot 11, in block 1, of The Uplands, an addition to the city of Seattle. The cause proceeded to trial in the superior court, sitting without a jury, as one of equitable cognizance. Mrs. Moore's claim for relief is rested upon: (1) Alleged failure of title and inability of the trust company to cause to be conveyed to her good title to the lot, free from incumbrances, in accordance with the terms of the sale contract; and (2) upon alleged false and fraudulent representations and promises made by the defendants Clarke and The Uplands, Inc., for which the trust company is liable, inducing her to enter into the sale contract. The trial court decided that Mrs. Moore was not entitled to any relief upon either of these grounds against either of the defendants, and rendered final judgment of dismissal against her accordingly, from which she has appealed to this court.

Having arrived at the conclusion that the superior court erred in denying Mrs. Moore relief upon the first mentioned ground, though it did not err in so ruling upon the second mentioned ground, we find it necessary to notice only the facts determinative of her right to relief upon the first mentioned ground.

On September 1, 1927, the defendant The Uplands, Inc., was, we may assume for present purposes, the equitable owner of a large number of lots in The Uplands, an addition to the city of Seattle, including the lot here in question. On that day The Uplands, Inc., entered into a contract with the defendant Clarke, doing a real estate business in Seattle, by which Clarke became agent for the sale of the lots. At that time, or very soon thereafter, the defendant trust company was or became the absolute record owner of the lots; manifestly with intent on the part of all interested parties that it be thereby enabled to contract for the sale of the lots and make conveyance of good title to prospective purchasers. The trust company held the record title under a secret, unrecorded trust agreement with The Uplands, Inc. The trust company acquiesced in and recognized the sales agency of Clarke.

On January 10, 1928, Mrs. Moore had been negotiating with one of Clarke's salesmen looking to the purchase of the lot in question, and on that day paid to Clarke $1,500 as earnest money on the prospective purchase by her of the lot at a total agreed purchase price of $15,000, the balance to be paid on or before July 10, 1928. Soon thereafter, Mrs. Moore was informed by Clarke that he found that he did not have authority to sell that lot on terms less than a down payment of $3,750; so, on February 15, 1928, she, assuming that information to be true, paid to Clarke $2,250 additional on the agreed purchase price of the lot, and received

from him a new receipt acknowledging a total payment of $3,750.

A short time thereafter, a formal contract for the sale and conveyance of the lot from the trust company to Mrs. Moore was by Clarke presented to Mrs. Moore for her signature, which she then signed in duplicate, both of which duplicates were then retained by Clarke for return to the trust company for its signature. These were upon printed forms, manifestly prepared for the express purpose of making such contracts, the name "Seattle Title Trust Company" being printed therein as vendor. Thereafter, on March 1, 1928, the trust company signed these duplicates, and on March 5, 1928, returned one of them to Mrs. Moore by mail, she receiving it the next day. These duplicate contracts, so executed, read, in so far as need be here noticed, as follows:

"THIS AGREEMENT, made this 10th day of January, 1928, between Seattle Title Trust Company, a Washington corporation, as first party, and Pearl M. Moore, as second party.

"WITNESSETH: That first party hereby agrees to sell to second party the following described property situate in the city of Seattle, county of King, state of Washington, to wit:

"Lot eleven (11) in block one, The Uplands, an addition to the city of Seattle, according to the plat thereof recorded in volume 28 of plats, page 42, in the records of the auditor of King county, Washington, with the appurtenances thereunto belonging, subject to the protective restrictions, recorded September 23, 1926, in volume 1334 of deeds, beginning at page 25, in the records of the office of the auditor of King county, Washington, and subject to the right of the city to make necessary slopes in original grading of streets, as granted in the dedication of the plat, upon the following terms:

"1. The purchase price of said land is fifteen thousand dollars ($15,000) of which the sum of three thou-

sand seven hundred fifty dollars ($3,750) has been paid as earnest, the receipt of which is hereby acknowledged by first party. The balance of the purchase price shall become due and payable at the office of the Seattle Title Trust Company, Seattle, Washington, in installments as follows: The balance of eleven thousand two hundred fifty dollars ($11,250) shall be payable on or before July 10, 1928. . . .

"2. Second party hereby covenants and agrees to purchase said land at the price above stated and to make payment therefor in the amounts and at the times above stated. . . .

"5. Second party hereby acknowledges receipt from first party of a satisfactory policy of title insurance in the full amount of the purchase price . . .

"6. When said purchase price shall have been fully paid, said land, subject to said restrictions and rights, shall be conveyed by said first party by special warranty deed to said second party, free and clear of all other liens and incumbrances existing as of the date of this contract, or any other lien or incumbrance that may hereafter be placed on said property by first party."

In the letter accompanying the sending of Mrs. Moore's duplicate of the contract to her, the trust company said:

"We are inclosing herewith your copy of real estate contract covering the purchase of lot 11, block 1, The Uplands Addition, which has now been executed by this company. We are also inclosing Washington Title Insurance Company's policy."

The fact in this connection is that no title insurance policy was then sent to Mrs. Moore, but, thereafter, on March 17, 1928, The Uplands, Inc., did send by mail to Mrs. Moore a title insurance policy. This policy was the first evidence of the condition of the title to the lot brought to Mrs. Moore's notice. It shows an incumbrance upon the title to the lot against which it does not insure, which is recited in the policy

as "an easement for sewer as disclosed in the plat of said addition." There is attached to the policy a sketch map of the lot purporting to show its size and location in the addition, but no indication whatever of any sewer easement on or across it. The information furnished by this policy, being the first suggestion coming to Mrs. Moore of any incumbrance upon the lot, other than the restrictions and rights mentioned in the sale contract, induced her to make further inquiry by looking for some evidence of the stated sewer easement upon the recorded plat, which she did, and discovered for the first time that the recorded plat showed a dotted line running northerly and southerly across lots 7, 8, 9, 10, 11, 12 and 13, inclusive, of block 1 of the addition, marked "sewer easement."

Further inquiry brought to her notice the fact that there was, some eight feet below the surface, the actual existence of a constructed eight-inch sewer, approximately along the line indicated on the recorded plat, and that such sewer was for the purpose of serving many lots in the addition other than the ones we have noticed across which it ran. The line of this easement is approximately across the middle of lot 11. It is plain that this sewer easement is appurtenant to the ownership of a large number of lots in the addition. Mrs. Moore had no cause to believe that this sewer easement existed across the lot, or of the physical existence of the sewer there, until her inquiry, prompted by the information given her by the insurance policy and an inspection of the recorded plat, which, as we have seen, did not occur until long after she had parted with the whole of the $3,750, and after her execution of the formal sale contract with the trust company.

Mrs. Moore then complained to each of the defendants about this sewer easement, objecting to it as an in-

cumbrance upon the title to the lot which was not, by the sale contract, to be or remain upon the title to the lot upon its conveyance to her. Failing to get any satisfaction in response to her complaint, and it becoming plain that the defendants would not cause the removal of this easement incumbrance upon the title to the lot, she commenced this action on July 10, 1928, the day on which the deal was to be closed, seeking rescission of the sale contract upon that ground and the other ground as above noticed. Mrs. Moore did not know—indeed it was intended by the trust company and The Uplands, Inc., that she should not know—of the equitable title interest of The Uplands, Inc., in the lot, though she did know that The Uplands, Inc., was in some manner interested with Clarke in making sale of the lot.

Is this sewer easement an incumbrance upon the title to the land lying within the boundaries of lot 11 here in question? It seems plain to us that it is. Our decision in *Wingard v. Copeland*, 64 Wash. 214, 116 Pac. 670, seems to us to be decisive of this question. In that case, the defendant Copeland, vendee, sought, by cross-complaint, rescission of the sale contract and recovery of the amount he had paid upon the agreed purchase price; this was in the action instituted by the plaintiff Wingard, vendor, seeking recovery of the unpaid balance of the agreed purchase price. That claimed right of rescission and recovery on the part of Copeland was rested upon the ground of failure of "full fee simple title," as agreed to be conveyed, in that there was an outstanding water flume or conduit right-of-way in favor of a third party over the land in question, in which there was maintained a water pipe line across the land. In that case, we held that such easement right was such an incumbrance upon the title of the plaintiff vendor in the land as to render him

unable to convey title as he contracted to convey. In so deciding, we said, in part:

"Some contention is made that, notwithstanding the existence of this easement, appellant in any event has marketable title to the land. We are not able to adopt this view. In 26 Cyc. 818, 'marketable title' is defined as 'a term which when applied to real estate is used to designate a title free from reasonable doubt.' 19 Am. & Eng. Ency. Law (2d ed.), 1138; 1 Warvelle, Vendors (2d ed.), §§ 46, 299. We do not think that the question of marketable title is involved here at all. It is clear that appellant has not a 'full fee simple title to the land.' There is no doubtful question as to this. If it could be made to appear with reasonable certainty that this easement did not in fact exist, though there was a bare possibility that it might exist, we would have a case involving this contention; but we know that it does exist and that appellant's title is impaired to that extent. It may be that this easement is comparatively only a slight hindrance to full enjoyment of the land by appellant, but the certainty of its existence renders it such that respondents were not obliged to accept the title offered by appellant, in view of the expressed terms of the contract."

The following authorities, we think, strongly support this view of the law: *Miller v. Calvin Philips Co.*, 44 Wash. 226, 87 Pac. 264; *Aust v. Matson*, 128 Wash. 114, 222 Pac. 225; *Snowden v. Derrick*, 14 Cal. App. 309, 111 Pac. 757; *Bozdech v. Montana Ranches Co.*, 67 Mont. 366, 216 Pac. 319; *Hershorn v. Rubenstein*, 259 Mass. 288, 156 N. E. 251; 39 Cyc. 1501.

■ Was Mrs. Moore, by the terms of the sale contract, required to accept conveyance of title subject to the incumbrance of the sewer easement, by reason of the restrictions and rights subject to which she was to take title, as mentioned in the sale contract? These mentioned restrictions and rights, to which her title was to be subjected, are before us in the title insurance policy, abstracted from the recorded instrument men-

tioned in the sale contract. Plainly, none of them is specified, even inferentially, in that instrument as including the sewer easement. So it seems plain to us that Mrs. Moore was not, by any of these mentioned restrictions and rights, required to take conveyance of title subject to the sewer easement.

■ Was Mrs. Moore, by the terms of the description of the lot in the sale contract, required to accept conveyance of title subject to the incumbrance of the sewer easement? The description, we have seen reads:

"Lot eleven (11) in block one, The Uplands, an addition to the city of Seattle, according to the plat thereof recorded in volume 28 of plats, page 42, in the records of the auditor of King county, Washington, with the appurtenances thereunto belonging."

It is contended in behalf of the defendants, in substance, that this reference to the recorded plat means that the sewer easement running across the lot is, in effect, excluded from the title to the lot which is contracted to be conveyed to Mrs. Moore. Decisions are cited in support of this contention to the effect that official plats referred to in land sale contracts and deeds in aid of descriptions therein become, in legal effect, a part of the description. We may concede that this is so in so far as the boundaries of a lot or tract may be shown by officially recorded plats referred to in contracts and deeds in aid of descriptions therein; but we think it is not the law that mere easement rights of this nature are other than incumbrances upon the title to land within the boundaries of the lot. That is the land contracted to be conveyed to Mrs. Moore free from all incumbrance save those specifically mentioned in the contract, and we have seen that the sewer easement is not either expressly or inferentially so mentioned therein.

582

■ We are also of the opinion that there is no element of estoppel working against the claimed right of Mrs. Moore to have title to the lot conveyed to her so as to vest in her fee simple title free from this sewer easement incumbrance. She had no actual notice of this incumbrance so far as the physical aspect of the lot is concerned, and had no occasion to pay any attention to the paper title to the lot until this sewer easement incumbrance was suggested to her by information she obtained upon receipt of the title insurance policy after she had parted with the whole of her $3,750, and after she had entered into the formal sale contract with the trust company, the holder of the title.

We conclude that Mrs. Moore is entitled to judgment adjudicating her right to rescind the sale contract and have awarded to her recovery from the Seattle Title Trust Company the full sum of $3,750, the amount paid by her upon the agreed contract price, with interest at legal rate on $1,500 thereof from January 10, 1928, and on $2,250 thereof from February 15, 1928.

■ Since the whole of the $3,750 was, in legal effect, paid to the trust company by Mrs. Moore and receipt therefor so acknowledged by it, we see no ground to award her any recovery against either Clarke or The Uplands, Inc. They, so far as she was concerned, were at all times only the agents of the trust company. She never knew them in any other capacity. If we could see our way clear to award Mrs. Moore the relief she seeks upon the alleged ground of fraudulent representations and promises on the part of Clarke and The Uplands, Inc., she might be entitled to judgment against them as well as against the trust company, but we do not think the record warrants relief upon that ground.

The judgment of dismissal is reversed in so far as it denies Mrs. Moore relief as against the trust company, and the cause is remanded to the superior court with directions to award her relief against the trust company as herein indicated. This being a cause of equitable cognizance, we exercise our discretion in awarding costs in this court as follows: Mrs. Moore is awarded her costs against the trust company. Clarke and The Uplands, Inc., in view of the fact that they joined with the trust company, making a single appearance and the same contentions in this court, shall not be awarded any costs as against Mrs. Moore, though as against them she is not successful in this court.

MITCHELL, C. J., TOLMAN, BEALS, and MILLARD, JJ., concur.