[No. 23289-8-II.   Division Two.   April 16, 1999.]

DAVID A. MCPHADEN, ET AL., *Respondents*, v. RUSSELL D. SCOTT, *Appellant*.

*Don Peter William Taylor* of *Fristoe Taylor & Schultz*, for appellant.

*James K. Sells* of *McCluskey Sells Ryan Uptegraft & Decker*, for respondents.

ARMSTRONG, J. — Russell Scott owns land adjoining that of David and Lynne McPhaden in Haven Lake in rural Mason County. When Scott claimed the right to access his lots by an easement across the McPhadens' property, the McPhadens sued to quiet title. Scott counterclaimed to establish an easement by grant, implication, or prescription. The trial court granted summary judgment on the issue of easement by grant, but it allowed the issue of easement by implication to be tried. After Scott presented his case at trial, the court granted the McPhadens' motion for a directed verdict. Scott appeals, arguing that the trial court erred in (1) finding no express easement, and (2) finding

the evidence was insufficient to establish an easement by implication. Finding no error, we affirm.

## FACTS

David and Lynne McPhaden own lot 254 in Haven Lake in rural Mason County. Russell Scott owns lots 253 and 255, located on either side of the McPhadens' property.

Haven Lake Development Company originally owned the entire tract encompassed within the plat of Haven Lake. Haven Lake Development Company recorded the Haven Lake plat on June 25, 1956. On June 11, 1957, a surveyor recorded a document entitled "Access Easement—Lots 251 thru 256" with the Mason County Auditor's office. This document consisted of a map with the following language:

> A 15 foot easement with 7.5 feet of such width lying on either side of the following described centerline over and across Lots 251 through 256 in the plat of "Haven Lake" as recorded in Vol. 4 of Plats, pages 131-138, Records of MASON COUNTY, WASHINGTON, Section 30 . . . .

The map depicts an access road originating on lot 255 and crossing lot 254. The access road connects lot 255, a county road (Rhododendron Drive), and an easement road. When this map was recorded, Haven Lake Development Company owned lots 251 through 256.

Charles and Phyllis Kain purchased lot 255 in July 1957 from Haven Lake Development Company. Phyllis Kain testified that she remembered a road consisting of "two ruts" that ran uphill along the property line between lots 255 and 254. The Kains used this road from 1957 until the early 1960s, when the culvert no longer existed. The Kains sold lot 255 to Scott in 1995. Scott also purchased lot 253 in 1995.

After acquiring his lots, Scott reinstalled a culvert to allow access to Rhododendron Drive. Scott also removed small alder trees and added gravel to the access road. At trial, Scott conceded that a culvert and a driveway could be

installed to allow access from lots 253 and 255 to Rhododendron Drive without crossing lot 254.

The McPhadens purchased lot 254 in October 1995. When Scott claimed the right to access his lots via an easement across lot 254, the McPhadens sued to quiet title. Scott counterclaimed to establish an easement by grant, implication, or prescription.

The trial court granted summary judgment on Scott's express easement claim, finding the recorded map did not create an easement and was not a proper amendment of the original plat. After Scott presented his case at trial, the trial court granted the McPhadens' motion for a directed verdict, finding the evidence insufficient to establish an easement by implication or prescription.

### Express Easement

Scott argues that an issue of material fact exists as to whether the recorded map created an express easement. Because of this, according to Scott, the trial court erred in granting summary judgment on this issue.

When reviewing a summary judgment order, the role of the appellate court is to engage in the same inquiry as the trial court. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). A summary judgment motion under CR 56(c) can be granted only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law. *Barrie v. Hosts of Am., Inc.*, 94 Wn.2d 640, 642, 618 P.2d 96 (1980). The court must consider all facts submitted and all reasonable inferences from the facts in the light most favorable to the nonmoving party. *Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co.*, 81 Wn.2d 528, 530, 503 P.2d 108 (1972); *Barber v. Bankers Life & Cas. Co.*, 81 Wn.2d 140, 142, 500 P.2d 88 (1972).

Easements are interests in land. *Bakke v. Columbia Valley Lumber Co.*, 49 Wn.2d 165, 170, 298 P.2d 849 (1956). As such, express easements must comply with the

statute of frauds, which requires that "[e]very conveyance of real estate, or any interest therein, and every contract creating or evidencing any encumbrance upon real estate, shall be by deed[.]" RCW 64.04.010; *Berg v. Ting*, 125 Wn.2d 544, 551, 886 P.2d 564 (1995). Deeds must "be in writing, signed by the party to be bound thereby, and acknowledged[.]" RCW 64.04.020. But no particular words are necessary to constitute a grant of easement. "[A]ny words which clearly show the intention to give an easement . . . are sufficient to effect that purpose, providing the language is sufficiently definite and certain in its terms." *Beebe v. Swerda*, 58 Wn. App. 375, 379, 793 P.2d 442 (1990) (citations omitted).

The critical issue here is whether the recorded map created an express easement. The McPhadens note that the map does not contain any of the elements necessary to grant an easement, i.e., the map does not convey an interest in land from *grantor* to *grantee*. *See* BARRON'S LAW DICTIONARY 123 (Steven H. Gifis ed., 3d ed. 1991) ("DEED an instrument in writing which conveys an interest in land from the grantor to the grantee . . . ."). Further, the map is not signed or acknowledged as required by RCW 64.04-.020.

Scott relies upon *Moore v. Clarke*, 157 Wash. 573, 289 P. 520 (1930), for the proposition that "[an easement] may be created by nothing more than a dotted line on a plat map." In *Moore*, the plaintiff sought to rescind a real estate contract after discovering a sewer easement encumbered her property. The court determined that the sewer easement was plainly an encumbrance upon the title to the land lying within the boundaries of the lot in question. *Moore*, 157 Wash. at 579. Importantly, the original plat map evidenced the easement with a dotted line marked "sewer easement." *Moore*, 157 Wash. at 578.

Here, in contrast, the original plat map filed by Lake Haven Development Company does not show an easement. Rather, a surveyor recorded a separate document one year

later in an apparent attempt to amend or alter the original plat map. But this was not sufficient to alter the original plat map. Former RCW 58.16.020 (repealed by LAWS OF 1969, 1st Ex. Sess., ch. 271, § 36) required each plat, subdivision or dedication to be submitted for approval to the legislative planning authority before the property could be sold or offered for sale. And former RCW 58.16.060 provided that "[u]pon compliance with the provisions of 58.08.030 and 58.08.040 the plat, subdivision, or dedication shall be eligible for filing . . . and thenceforth it shall be known as an authorized plat, subdivision or dedication of the land." Former RCW 58.16.060 (LAWS OF 1955, ch. 299, § 1).[1] As these requirements were not met, the mere filing of the "easement" map did not alter or amend the original plat map.[2]

The recorded map does not meet the requisites of RCW 64.04.010, RCW 64.04.020, or former RCW 58.16.020. We hold the trial court properly concluded the map did not create an express easement and did not amend the original plat map.

---

[1] In general, RCW 58.08.030 requires the filing of a certificate acknowledging that all taxes have been paid, satisfied and discharged before a plat, map, subdivision or replat may be recorded.

[2] WAC 332-130-050 sets forth the requirements for altering, amending, changing, or correcting survey information on previously filed or recorded maps, plats, or plans. This section provides that a new document must be filed or recorded and contain the following information:

(i) A title or heading identifying the document as an alteration, amendment, change, or correction to a previously filed or recorded map, plat, or plan along with, when applicable, a cross-reference to the volume and page and auditor's file number of the altered document;

(ii) Indexing data as required by subsection (1)(a)(iv) of this section;

(iii) A prominent note itemizing the change(s) to the original document.

Each item shall explicitly state what the change is and where the change is located on the original[.]

WAC 332-130-050(3)(c). Although this WAC did not govern in 1957 when the map was recorded, its requirements are illustrative.

## Implied Easement

Scott next argues that the trial court erred in directing a verdict on the claim of easement by implication.

In ruling on a motion for directed verdict, the trial court must accept the truth of the nonmoving party's evidence and draw all reasonable inferences in the light most favorable to that party. *Levy v. North Am. Co. for Life & Health Ins.*, 90 Wn.2d 846, 851, 586 P.2d 845 (1978). The trial court must grant the motion only if no competent evidence or reasonable inference exists to sustain a verdict in favor of the nonmoving party. *Lockwood v. AC&S, Inc.*, 109 Wn.2d 235, 243, 744 P.2d 605 (1987). If any "justifiable" evidence exists from which reasonable minds could reach a verdict in the nonmoving party's favor, the question is for the jury. *Levy*, 90 Wn.2d at 851 (citations omitted).

The factors relevant to establishing an implied easement, either by grant or reservation, are (1) former unity of title and subsequent separation; (2) prior apparent and continuous quasi-easement[3] for the benefit of one part of the estate to the detriment of another; and (3) a certain degree of necessity for the continuation of the easement. *Adams v. Cullen*, 44 Wn.2d 502, 505, 268 P.2d 451 (1954); *Fossum Orchards v. Pugsley*, 77 Wn. App. 447, 451, 892 P.2d 1095 (1995) (citations omitted).

The first factor is essential for creation of an implied easement. The presence or absence of the second and third factors is not necessarily conclusive. Rather, they are aids to determining the presumed intent of the parties as disclosed by the extent and character of the use, the nature of the property, and the relation of the separated parts to each other. *Adams*, 44 Wn.2d at 505-06; *Fossum Orchards*, 77 Wn. App. at 451; *Roberts v. Smith*, 41 Wn. App. 861, 865, 707 P.2d 143 (1985). Here, it is undisputed that the Haven Lake Development Company formerly owned all

---

[3]A "quasi-easement" refers to the situation where one portion of property is burdened for the benefit of another portion, which would be a legal easement if different persons owned the two portions of property. *Adams*, 44 Wn.2d at 504.

three parcels, thus establishing unity of title. But Scott failed to present sufficient evidence of the remaining two factors—prior continuous use and reasonable necessity.

Scott maintains that he proved prior apparent and continuous use of the access road.

> The road was installed. It had been used by the owner of the land (Haven Lake) essentially for access to all of the lots affected, to enable the logging of the same. The road was apparent to Kain when they purchased the property. Prior to Kain closing their transaction a culvert was installed to facilitate the connection of the road to the county road.

But Phyllis Kain testified that her family had not driven a vehicle on the access road since the early 1960s. Robert Skillman, Jr., Scott's logger, admitted that he did not know whether the road had been recently used, and if it had, by whom and for how long. Harry Rydell, the surveyor of lots 253 and 255, stated that he too lacked knowledge regarding the use of the access road. And Scott admitted he could not testify as to any use of the access road beyond reiterating Phyllis Kain's testimony. Thus, the evidence presented failed to establish prior continuous use of the access road.

Scott also maintains that the access road was necessary to the proper enjoyment of his property.

> Due to the wetlands and water impoundment by reason of the county road and the culvert across the county road, the easement was necessary for the reasonable access to Lot 255 from the county road. It also provided access from Lot 255 across the rear portion of Lot 254 to Lot 253.

But Scott himself admitted that neither lot 255 nor any of the other surrounding lots have been declared a "wetland." Further, Scott testified that a culvert and a driveway could be installed to allow access from lots 253 and 255 to Rhododendron Drive without crossing lot 254.[4] Thus, Scott's testimony alone established that the access road

---

[4]Scott testified that no state or federal agency had informed him that he could not install a driveway with a culvert to access lots 255 and 253 from Rhododendron Drive.

was not reasonably necessary to the use of his property. *See Adams*, 44 Wn.2d at 507 (an easement by implied grant requires only reasonable necessity not absolute necessity); *Berlin v. Robbins*, 180 Wash. 176, 189, 38 P.2d 1047 (1934) ("The test of necessity is whether the party claiming the right can, at reasonable cost, on his own estate, and without trespassing on his neighbors, create a substitute.").

Because Scott failed to present evidence of prior continuous use and reasonable necessity, the trial court properly granted a directed verdict on the issue of easement by implication.

Affirmed.

BRIDGEWATER, C.J., and SEINFELD, J., concur.

Review denied at 138 Wn.2d 1017 (1999).