
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

ERIK SOLBERG and MEGAN )
SOLBERG, husband and wife, )           No. 40743-8-III
                                       )
          Appellants, )
                                       )
     v. )
                                       )           UNPUBLISHED OPINION
RIVER PARK ESTATES PROPERTY )
OWNERS ASSOCIATION, a Washington )
Miscellaneous and Mutual Corporation, )
                                       )
          Respondent. )

COONEY, J. — Erik and Megan Solberg purchased "Lot 1" in River Park Estates in

2019. Thereafter, they discovered the River Park Estates Property Owners Association

(River Park), the homeowner's association (HOA) for River Park Estates, asserted an

easement right on their property. The Solbergs filed a complaint against River Park

requesting a declaratory judgment that the easement was invalid, injunctive relief, and a

judgment quieting titled in their favor. The parties filed cross motions for summary

judgment. River Park's motion for summary judgment was granted, and the Solbergs' motion was denied.

The Solbergs appeal arguing: (1) River Park was a stranger to the deed that created the easement at issue and therefore no easement rights could be created in it; (2) the instrument creating the easement did not satisfy the statute of frauds; and (3) the Solbergs did not have constructive notice of the easement. We conclude the deed River Park relies on to assert its easement rights unambiguously fails to grant or reserve an easement on the Solbergs' property. We reverse the trial court's order on summary judgment and remand for the court to enter judgment in favor of the Solbergs.

## BACKGROUND

River Park is the HOA for River Park Estates. The Covenants, Conditions, and Restrictions (CCRs) governing River Park were recorded on each lot within River Park Estates. The CCRs empower River Park to develop its private roadway system and create easements throughout River Park Estates.

In 1982, Kenneth Haff, as a declarant for River Park, commissioned a record of survey (1982 Survey) of all lots within River Park Estates and recorded it with the Spokane County Auditor's Office. Mr. Haff was one of the original developers of River Park Estates. The 1982 Survey depicted the easements burdening lots in River Park Estates. The 1982 Survey does not depict an easement on Lot 1 for an entrance to River Park Estates. Later, in 1998, an amended survey (1998 Amended Survey) was created

and filed with the Spokane County Auditor's Office. The 1998 Amended Survey stated, "[t]his record of survey is a rerecording of the survey recorded under inst. #8212200058 to update the easements presently in effect," and it depicted several easements not previously depicted on the 1982 survey. Clerk's Papers (CP) at 232. The 1998 Amended Survey referenced the 1982 Survey "as 8212200058 is the number the Spokane County Auditor's Office assigned to [the 1982 Survey] when it was recorded." CP at 232. The 1998 Amended Survey depicted a 45' by 75' foot easement on Lot 1 labeled "Entrance Easement." CP at 78.

In 1998, just prior to the recording of the 1998 Amended Survey, Mr. Haff became the sole owner of Lot 1 via quit claim deed. The quit claim deed referenced the 1982 Survey. A few months later, Mr. Haff executed a quit claim deed, conveying Lot 1 to himself and his wife, Lenora Haff (Haff-Haff Deed). The Haff-Haff Deed referenced the 1998 Amended Survey in the legal description of Lot 1. On the same day, the Haffs conveyed Lot 1 to Jerry Berry via statutory warranty deed (Haff-Berry Deed):

### STATUTORY WARRANTY DEED

THE GRANTORS, ***KENNETH E. HAFF and LENORA J. Haff, husband and wife,*** for and in consideration of Ten Dollars ($10.00) and other valuable consideration in hand paid, convey and warrant to ***JERRY L. BERRY, A MARRIED MAN,**** the following described real estate, situated in the County of Spokane, State of Washington:

***\*as his separate property***
***A Parcel of land in the Southeast Quarter of S.32, T.27N., R.42E.W.M., known as Lot 1 of survey recorded in Book 28 of surveys, page 7, said survey being also recorded on October 5, 1998, in Book 29 of Surveys,***

3

> **Pages 7A and 8A, being more particularly described on the Attached
> Exhibit "A", which is incorporated herein by this reference.**
>
> Tax Account No. 27324.9046.
>
> *TOGETHER WITH AND SUBJECT TO: 1999 Real Estate Taxes, Storm
> Water Fees and Aquifer Fees, Restrictive covenants, conditions and
> easements of record and being set forth in that certain Commitment for
> Title Insurance issued by Transnation Title Insurance Company, dated
> September 25, 1998, under their File No. CRD-221993, and any
> amendments thereto, including but not limited to those certain matters as
> set-forth in that certain record of survey recorded October 5, 1998, in Book
> 29 of Surveys, Pages 7A and 8A, under Auditor's File No. 4276791.
> RESERVING UNTO THE GRANTOR ALL EXISTING RIGHTS TO THE
> WATER SYSTEM TO BE CONVEYED TO THE STEVENS COUNTY
> P.U.D., AND RESERVING UNTO THE GRANTOR A ROAD EASEMENT
> FOR MAINTENANCE, BEING 15 FEET ON EACH SIDE OF THE
> CENTERLINE OF ALL EXISTING PIPELINE EASEMENTS. The Grantee
> has acknowledged that it has had the opportunity of reviewing said
> Commitment.*

CP at 109.

Lot 1 was later conveyed via a deed of trust to DCBL, Inc., and then, via a

trustee's deed, to Residential Funding Corporation. Residential Funding Corporation

then conveyed Lot 1 to John and Trudy Konzal in 2001. The deed in this conveyance

referenced both the 1982 Survey and the 1998 Amended Survey. A year later, the

Konzals conveyed Lot 1 to David Moses and Juan Moses.

In 2019, the Solbergs purchased Lot 1 from David and Juan Moses via a statutory

warranty deed (Solberg Deed). The Solberg Deed referenced the 1982 Survey but not the

1998 Amended Survey. The Solberg Deed also stated it was "[s]ubject [t]o: This

4

conveyance is subject to covenants, conditions, restrictions and easements, if any, affecting title, which may appear in the public record, including those shown on any recorded plat or survey." CP at 114. At some point after the Solbergs purchased Lot 1, they learned of the HOA's claim that the Entrance Easement burdened their property.

In 2023, the Solbergs filed suit against River Park requesting a declaratory judgment that the Entrance Easement was invalid, injunctive relief,[1] and a judgment quieting title in their favor. Thereafter, the parties filed cross motions for summary judgment. The Solbergs moved for partial summary judgment requesting the court grant their causes of action for declaratory judgment, quiet title, and injunctive relief and dismiss some of River Park's counterclaims. The Solbergs argued, in part, that the 1998 Amended Survey did not satisfy the statute of frauds. In their reply, the Solbergs also argued River Park was "a stranger to the [Haff-Berry Deed] and could not acquire any rights therefrom." CP at 245. River Park moved for partial summary judgment requesting that the court dismiss "the Solbergs' declaratory judgment and quiet title claims." CP at 171.

---

[1] A portion of the Solbergs' cause of action for injunctive relief relates to "security cameras on the entrance gate" and is not at issue in this appeal. CP at 287. That claim, along with some of River Park's counterclaims, was dismissed without prejudice to facilitate the bringing of this appeal.

In support of River Park's position, Mr. Haff filed a declaration in which he explained that he "commissioned and intended the 1998 [Amended] Survey to amend the 1982 Survey that" was previously recorded. CP at 232. Moreover, he declared that the purpose of the 1998 Amended Survey was to describe "several new easements" that he intended "to burden the lots on which they are located in order to serve the beneficial interest of the [HOA] and its members." CP at 232. He declared that when he "conveyed Lot 1 to Mr. Berry, [he] intended to reserve the Entrance Easement and the other easements situated thereon in the 1998 [Amended] Survey for the benefit of the [HOA] and its other members." CP at 233.

Following the parties' arguments, the trial court denied the Solbergs' partial motion for summary judgment and granted River Park's motion. The trial court dismissed the Solbergs' causes of action for declaratory judgment, quiet title, and injunctive relief with prejudice and granted River Park's requests for declaratory judgment and quiet title.

The Solbergs appeal. During oral argument before this court, counsel for River Park was asked to identify which document in the record granted or reserved the Entrance Easement. Counsel for River Park directed us to the Haff-Berry Deed. Wash. Court of Appeals oral argument, *Solberg v. River Park Estates*, No. 40743-8-III (Sept. 4, 2025), at 15 min., 10 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org. After this case was submitted, we asked the parties for supplemental

briefing on whether "the creation of an easement require[s] granting language and if so, which language, with citation to the record, conveys the easement in question here?" Letter from Tristen Worthen, Clerk of Court, *Solberg v. River Park Estates*, No. 40743-8-III (Wash. Ct. App. Sept. 5, 2025).  River Park responded, in part, that the "plain language in the Haff-to-Berry Deed and those that followed are sufficient, in and of themselves, to demonstrate the intent to create an easement."  Resp't's Supp. Br. at 10.

ANALYSIS

The Solbergs argue the superior court erred in granting summary judgment in favor of River Park and in denying their motion for summary judgment.  Specifically, the Solbergs assert that Washington law does not allow an entity to claim rights through an instrument in which it was not a party.  The Solbergs claim that an easement could not have been granted to River Park through the Haff-Haff Deed and the Haff-Berry Deed because River Park was a stranger to both deeds.  River Park responds that it was not a stranger to either deed because it exists as an extension to the CCRs that were recorded on Lot 1.

We review orders on summary judgment de novo.  *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015).  Summary judgment is only appropriate if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law.  *Id*.; CR 56(c).  The moving party bears the initial burden of establishing that there are no disputed issues of material fact.  *Young v. Key Pharms., Inc.*, 112 Wn.2d 216,

7

225, 770 P.2d 182 (1989). "A material fact is one upon which the outcome of the litigation depends in whole or in part." *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990).

When considering a motion for summary judgment, evidence is considered in a light most favorable to the nonmoving party. *Keck*, 184 Wn.2d at 368. If the moving party satisfies its burden, then the burden shifts to the nonmoving party to establish there is a genuine issue for the trier of fact. *Young*, 112 Wn.2d at 225-26. While questions of fact typically are left to the trial process, they may be treated as a matter of law if "reasonable minds could reach but one conclusion." *Hartley v. State*, 103 Wn.2d 768, 775, 698 P.2d 77 (1985).

A nonmoving party may not rely on speculation or having its own affidavits accepted at face value. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986). Instead, a nonmoving party must put "forth specific facts that sufficiently rebut the moving party's contentions and disclose that a genuine issue as to a material fact exists." *Id.*

"The interpretation of an easement is a mixed question of law and fact." *Sunnyside Valley Irr. Dist. v. Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003). "What the original parties intended is a question of fact and the legal consequence of that intent is a question of law." *Id.* "The intent of the original parties to an easement is determined from the deed as a whole." *Id.* Extrinsic evidence is not considered if the plain language

8

is unambiguous. *Id.* If, however, ambiguity exists, extrinsic evidence is "allowed to show the intentions of the original parties, the circumstances of the property when the easement was conveyed, and the practical interpretation given the parties' prior conduct or admissions." *Id.* "A written instrument is ambiguous when its terms are uncertain or capable of being understood as having more than one meaning." *Murray v. W. Pac. Ins. Co.*, 2 Wn. App. 985, 989, 472 P.2d 611 (1970).

Before addressing whether River Park was a stranger to the deed, we must first determine what, if any, easement in Lot 1 was granted or reserved through the Haff-Berry Deed. [2]

An "easement" is "'a right, distinct from ownership, to use in some way the land of another, without compensation.'" *City of Olympia v. Palzer*, 107 Wn.2d 225, 229, 728 P.2d 135 (1986) (quoting *Kutschinski v. Thompson*, 101 N.J. Eq. 649, 656, 138 A. 569 (1927)). An easement forms a burden on the land and an interest in land. *Kesinger v. Logan*, 113 Wn.2d 320, 326, 779 P.2d 263 (1989).

---

[2] River Park argues Mr. Haff was a declarant of the Property Owner's Association when he executed the Haff-Berry Deed. Resp't's Op. Br. at 21-22. However, nothing in the deed indicates that Mr. and Ms. Haff conveyed Lot 1 to Mr. Berry in anything other than their personal capacities. CP at 109 ("THE GRANTORS, KENNETH E. HAFF and LENORA J. HAFF, husband and wife . . .").

All real property interests in the state of Washington, including easements, must be conveyed by written deed. RCW 64.04.010, .020; *Kesinger*, 113 Wn.2d at 325-26. Black's Law Dictionary defines a "deed" as:

> 2. A written instrument by which land is conveyed. 3. At common law, any written instrument that is signed, sealed, and delivered and that conveys some interest in property.

BLACK'S LAW DICTIONARY 520 (12th ed. 2024). A document meets this requirement if it "demonstrate[s] a present intent to grant or reserve an easement" and is signed by the bound party and acknowledged. *Zunino v. Rajewski*, 140 Wn. App. 215, 222-23, 165 P.3d 57 (2007), *overruled by Hanna v. Margitan*, 193 Wn. App. 596, 373 P.3d 300 (2016); *see also* RCW 64.04.020. We construe the grantor's intent from the language in the document purporting to grant the easement. *Schwab v. City of Seattle*, 64 Wn. App. 742, 751, 826 P.2d 1089 (1992).

"[N]o particular words are necessary to constitute a grant of easement," provided the document clearly establishes an intention to give an easement. *McPhaden v. Scott*, 95 Wn. App. 431, 435, 975 P.2d 1033 (1999). The words "subject to" in a deed are sufficient to grant or reserve an easement. *See Beebe v. Swerda*, 58 Wn. App. 375, 379, 793 P.2d 442 (1990). Further, a deed is not required to establish the actual location of an easement but is required to convey the interest. *Smith v. King*, 27 Wn. App. 869, 871, 620 P.2d 542 (1980).

10

A property owner may create private easements through grants in a final plat. *See* RCW 58.17.165. A survey map lacks the statutory privileges afforded final plats. Nevertheless, a survey map may be sufficient to create an easement provided the necessary language granting or reserving the easement is included on the map, along with the bound party's signature and an acknowledgement. Moreover, an easement may be granted when a deed references a map. In such a case, the deed and map are construed together, and the map becomes, "in legal effect, a part of the description." *Moore v. Clarke*, 157 Wash. 573, 581, 289 P. 520 (1930).

Here, the 1998 Amended Survey, standing alone, does not grant or reserve an easement but merely refers to "easements" (i.e. "45'x 75' ENTRANCE EASEMENT" on the southwest corner of Lot 1). CP at 236. The 1998 Amended Survey is not signed by Mr. Haff, nor is it acknowledged, and lacks an independent demonstration of a then-present intent by the Haffs to grant or reserve an easement in Lot 1. Standing alone, the 1998 Amended Survey lacks the necessary requirements of RCW 64.04.020 to convey an easement in Lot 1. In other words, the 1998 Amended Survey alone did not create any easements.

River Park contends the Haff-Berry Deed coupled with the 1998 Amended Survey and Mr. Haff's then-present intentions are sufficient to create an easement. We disagree. Because the plain language of the Haff-Berry Deed unambiguously fails to grant or reserve the Entrance Easement, Mr. Haff's intentions are irrelevant.

11

The Haff-Berry Deed conveys Lot 1 from the Haffs to Mr. Berry subject to (1) conditions and (2) reservations. The conditions burden Mr. Berry, the grantee, and the reservations benefit the Haffs, the grantors. In regard to the conditions that burden Mr. Berry, the Haff-Berry Deed conveys Lot 1:

> *TOGETHER WITH AND SUBJECT TO . . . easements of record . . . including but not limited to those certain matters as set-forth in that certain record of survey recorded October 5, 1998, in Book 29 of Surveys, Pages 7A and 8A, under Auditor's File No. 4276791.*

CP at 109. Although the phrase "subject to" may be sufficient to grant or reserve an easement, as discussed above, the 1998 Amended Survey, in and of itself, is not an easement. Further, River Park fails to direct us to any other document that would qualify as an "easement[] of record" related to the Entrance Easement. CP at 109. Indeed, the "*TOGETHER WITH AND SUBJECT TO*" paragraph does not grant or reserve the "Entrance Easement" to anyone. CP at 109.

As to the reservations that benefited the Haffs or, as River Park argues, the HOA, the Haff-Berry Deed stated it:

> *RESERV[ES] UNTO THE GRANTOR ALL EXISTING RIGHTS TO THE WATER SYSTEM TO BE CONVEYED TO THE STEVENS COUNTY P.U.D., AND RESERVING UNTO THE GRANTOR A ROAD EASEMENT FOR MAINTENANCE, BEING 15 FEET ON EACH SIDE OF THE CENTERLINE OF ALL EXISTING PIPELINE EASEMENTS.*

CP at 109. Although the 1998 Amended Survey is incorporated into the Haff-Berry Deed under the conditions section, the deed fails to reserve unto the grantor any of the

12

easements depicted in the 1998 Amended Survey. Rather, the grantor only reserved limited rights in the water system and a road easement for maintenance. Had the Haffs desired to reserve the Entrance Easement as depicted in the 1998 Amended Survey, such language would have been contained in the reservation paragraph.

The Haff-Berry Deed and 1998 Amended Survey, construed together, unambiguously fail to grant or reserve an easement in the Entrance Easement. Thus, no Entrance Easement was created. To the extent River Park argues that any deeds subsequent to the Haff-Berry Deed grant or reserve an easement, we disagree. Having concluded the Haff-Berry Deed is insufficient to grant or reserve an easement, Mr. Haff could not thereafter convey an interest greater than the interest he held. *Sofie v. Kane*, 32 Wn. App. 889, 895, 650 P.2d 1124 (1982) (A grantor can convey no greater title or interest than he or she has in the property.). Because no easement was created, we need not address whether River Park was a "stranger" to the Haff-Berry Deed.

Lastly, the Solbergs contend the instrument creating the easement did not satisfy the statute of frauds and that they did not have constructive notice of the easement. Because we conclude that an easement was not granted or reserved, we need not address these issues.

The Haff-Berry Deed and 1998 Amended Survey did not grant or reserve an Entrance Easement. The trial court therefore erred in granting summary judgment in

13

favor of River Park. We reverse the court's order on summary judgment and remand for the trial court to enter judgment in favor of the Solbergs.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J.

WE CONCUR:

_____
Staab, A.C.J.

_____
Murphy, J.

14