[No. 32548. Department Two. April 2, 1954.]

CHESTER V. ADAMS *et al., Appellants,* v. FRANK CULLEN *et al., Respondents.*[1]

[1]Reported in 268 P. (2d) 451.

*Huneke & van Tyen,* for appellants.

*Wilmot W. Garvin,* for respondents.

WEAVER, J.—Can an easement by implication be created by implied reservation?

This is an appeal from a judgment declaring that respondents have an easement for ingress and egress across the land of appellants. The judgment orders appellants to remove certain obstructions from the right of way.

Appellants, Mr. and Mrs. Adams, are the owners of the servient estate. Mr. and Mrs. Cullen, the respondents, own the dominant estate. For brevity, we will only refer to Mr. Adams and Mr. Cullen. We use the terms "dominant estate" and "servient estate" to refer to the properties for the purpose of clarity, fully realizing that they are not such until it is determined that the easement actually exists.

The Spokane property involved is in Browne's Second Addition, one of the city's earliest residential districts. The property lies between First avenue on the south and Riverside avenue on the north. Upon the south portion (the servient estate) is the former Strahorn residence, now converted into and known as the Strahorn Apartments. The large carriage house, upon the adjacent north portion of the property (dominant estate), has also been converted into apartments and is now known as the Cullen Apartments.

A curbed, asphaltic concrete driveway enters the property at the intersection of the east boundary line and First avenue. It circles the north side of the former Strahorn residence, which is set back some distance from the street.

The driveway abuts the west side of the Strahorn Apartments, proceeds south about twenty feet east of the west line of the property, and returns to First avenue. The west portion of this driveway, which is eight feet wide between curbs, extends almost due north to the Cullen property. The west driveway, with which we are alone concerned, is the only means of ingress and egress for vehicular traffic to the Cullen Apartments. It has been in existence and use since the horse and carriage days of an earlier era.

Prior to 1945, Mr. Charles Cowan owned the entire property. By transactions not necessary for us to detail, the properties were separated and reached their present ownership. In some of the various instruments of sale and conveyance of the *servient* estate, there are references to easements for driveways. However, as a matter of law, they are insufficient to establish the existence of this right of way by written instrument. At most, the references are an indication of the intentions of the parties. The conveyance to Mr. Cullen of the *dominant* estate contains no reference to an easement.

If a right-of-way easement over the west driveway exists in favor of the dominant estate, it comes into existence by implication of law from the facts.

When Mr. Cowan owned the entire property, the south portion of it was burdened with the driveway for the benefit of the north portion. The situation is one which may arise between two pieces of land owned by the same person, when the enjoyment by one piece of a right in the other would be a legal easement, were the pieces owned by different persons. Many of the authorities refer to this as a "quasi easement." Strictly speaking, such a situation does not create an easement proper. 3 Tiffany, Real Property (3d ed.), § 781, p. 255-257; *Berlin v. Robbins,* 180 Wash. 176, 38 P. (2d) 1047 (1934); *Bushy v. Weldon,* 30 Wn. (2d) 266, 191 P. (2d) 302 (1948).

The parties disagree as to whether the dominant estate or the servient estate was first severed by Mr. Cowan. Upon this determination turns the answer to the question (if an

easement exists) of whether the easement arises by implied grant or by implied reservation. If the dominant estate was first conveyed by Mr. Cowan, the easement would have arisen by *implied grant* to Mr. Cullen of a right of way over the servient estate retained by Mr. Cowan, and now owned by Mr. Adams. If the servient estate was first conveyed, then the easement would have arisen by *implied reservation* to Mr. Cowan to use the right of way over the servient estate for the benefit of the dominant estate retained by him, and now owned by Mr. Cullen.

Appellant argues that the *servient* estate was severed first; that

"The Supreme Court of the State of Washington has by its decisions apparently *ruled out the implied reservation of an easement where the servient tenement* (Adams) *was conveyed first in time,* and requires that the dominant tenement (Cullen) only must be first conveyed." (Appellant's Opening Brief, p. 24.) (Italics ours.)

and that, therefore, Mr. Adams owns his property free of any easement inuring to the benefit of the land owned by Mr. Cullen.

For the purpose of this opinion, we accept appellant's major premise—that the servient estate was severed first.

We confine our discussion to the precise facts of this case where, prior to severance, there existed a definite, apparent, quasi easement for the benefit of one part of the land to the detriment of the other.

▮ An implied easement (either by grant or reservation) may arise (1) when there has been unity of title and subsequent separation; (2) when there has been an apparent and continuous quasi easement existing for the benefit of one part of the estate to the detriment of the other during the unity of title; and (3) when there is a certain degree of necessity (which we will discuss later) that the quasi easement exist after severance.

Unity of title and subsequent separation is an absolute requirement. The second and third characteristics are aids to construction in determining the cardinal consideration—the presumed intention of the parties as disclosed

by the extent and character of the user, the nature of the property, and the relation of the separated parts to each other. 3 Tiffany, Real Property (3d ed.), 253, 254, § 780; *Bailey v. Hennessey,* 112 Wash. 45, 191 Pac. 863 (1920). In *Rogers v. Cation,* 9 Wn. (2d) 369, 376, 115 P. (2d) 702 (1941), we pointed out that the rule is not a hard and fast one, and that the presence or absence of either or both of these requirements is not necessarily conclusive.

However, before the rule can be applied, two additional things must be determined. Was the dominant estate or the servient estate first conveyed by the common owner? What degree of necessity must be established by proof?

Some of our former decisions announced a rule applicable to an easement by implication without further defining the term. *Berlin v. Robbins, supra; White v. Berg,* 19 Wn. (2d) 284, 142 P. (2d) 260 (1943); *Bushy v. Weldon, supra.* An examination of the facts of these cases discloses that the court was discussing an easement by implied grant, the dominant estate having been conveyed first. When the rule, as stated in some of these opinions, is lifted out of context, it may be argued that easements by implied reservation have been eliminated in this jurisdiction.

For example, appellant finds his greatest solace in *Wreggitt v. Porterfield,* 36 Wn. (2d) 638, 639, 219 P. (2d) 589 (1950), wherein this court said:

"In order to establish an easement by implication, one must prove three essentials. They are, generally, (1) unity of title and subsequent separation by grant of the *dominant* tenement, (2) apparent and continuous user, and (3) the easement must be reasonably necessary to the proper enjoyment of the dominant tenement. *Rogers v. Cation,* 9 Wn. (2d) 369, 115 P. (2d) 702; *Evich v. Kovacevich,* 33 Wn. (2d) 151, 204 P. (2d) 839."

The *Porterfield* case, *supra,* is distinguishable. Therein plaintiff based her claim *for damages* upon the existence of an easement by *implied grant;* the trial court rendered its decision upon that theory. The sewer, for which she claimed an easement, was invisible and unknown to the parties. She

connected her house to the sewer directly in front of her property. The court said:

"In order to give rise to the presumption of a reservation of an existing easement or quasi easement, where the deed is silent upon the subject, the necessity must be of such a nature as to leave no room for doubt of the intention of the parties. This necessity cannot be deemed to exist if a similar privilege can be secured by reasonable trouble and expense." (p. 640)

The case is not authority for the rule that an easement cannot be created by implied reservation.

The first two essential requirements for the creation of an implied easement (either by grant or reservation) are present in this case. There was unity and subsequent separation of title; there was an apparent and continuous quasi easement existing for the benefit of one part of the estate to the detriment of the other during unity of title.

One further question remains. When the servient estate is severed first, what degree of necessity must appear from the facts, to show that the parties intended that the quasi easement should become an actual easement after severance?

While there is some conflict in the cases as to the degree of necessity required to create an easement by implied grant, the prevailing rule, and the one adopted by this court, is that the creation of such an easement does not require absolute necessity, but only reasonable necessity. *Evich v. Kovacevich,* 33 Wn. (2d) 151, 157, 204 P. (2d) 839 (1949), and cases cited. This court said, in *Berlin v. Robbins, supra,* dealing with an easement by implied grant,

"The test of necessity is whether the party claiming the right can, at reasonable cost, on his own estate, and without trespassing on his neighbors, create a substitute." (p. 189)

Since the purpose of the rule is to aid in determining the presumed intention of the parties, it may be argued that the presumption in favor of an implied reservation to the grantor should require no greater degree of necessity than in the case of an implied grant. The authorities, however,

are not in accord. Annotations: ·34 A. L. R. 242; 100 A. L. R. 1327; 164 A. L. R. 100-108.

· For an easement by implied reservation, the weight of authority requires a higher degree of necessity than for an implied grant. The usual term is "strict" necessity. *Wheeler v. Taylor*, 114 Vt. 33, 39 A. (2d) 190 (1944); *Blumberg v. Weiss*, 129 N. J. Eq. 34, 17 A. (2d) 823 (1941); *Dale v. Bedal*, 305 Mass. 102, 25 N. E. (2d) 175 (1940).

In *Schumacher v. Brand*, 72 Wash. 543, 547, 130 Pac. 1145 (1913) (a case involving an easement by implied grant), this court said:

"The courts generally hold that there is a difference between an implied reservation of an easement and the grant of an easement by implication. The distinction is put upon the ground that the former is in derogation of the deed and its covenants, and stands upon narrower ground than a grant."

It is not difficult to state that there must be "reasonable" necessity for the existence of an easement by implied grant and "strict" necessity for the existence of an easement by implied reservation. The difficulty arises when the trier of the facts must determine whether the facts satisfy the corresponding degree of necessity required by the rule.

The authors of the Restatement have avoided use of the term "strict necessity," but the following quotation indicates that, *in the absence of other considerations,* a higher degree of necessity is needed for an easement by implied reservation than is needed for an easement by implied grant.

"g. *The extent of necessity of the easement to the claimant.* In the greater number of cases, its necessity to the use of land of the claimant is the circumstance that contributes most to the implication of an easement. If no use can be made of land conveyed or retained without the benefit of an easement, it is assumed that the parties intended the easement to be created. This is true not only where it is claimed by the conveyor but also where it is claimed by the conveyee.

"Not only may the implication arise in favor of the conveyor when a prior use has been made, but it may arise

even though no use of the land corresponding to the use claimed had ever been made prior to the conveyance. The fact that the use claimed does correspond to a prior use is a circumstance contributing to the implication of the easement. . . . If land can be used without an easement, but cannot be used without disporportionate effort and expense, an easement may still be implied in favor of either the conveyor or conveyee on the basis of necessity alone without reference to prior use.

"If some use may be made, or if an alternative to the easement which might otherwise be implied can be secured, the implication becomes subject to control by other circumstances. Thus, the expense and effort necessary to secure a substitute by the conveyor may not be so disproportionate but that it may be assumed he was intended to suffer it, while like expense to the conveyee may warrant the inference that he was not intended to suffer it. While necessity alone justifies the inference of an easement without regard to other circumstances if the land cannot be used without it, *as necessity decreases a point is reached where necessity without reference to any prior use may justify the implication of an easement in favor of the conveyee though a like necessity would not justify an implication in favor of the conveyor.* Eventually, without its being possible to draw any precise line, necessity will not be sufficiently great to justify the implication except as it is strengthened by reference to a prior use of the land. In the different situations that may appear, a constantly decreasing degree of necessity will require a constantly increasing clearness of implication from the nature of the prior use. Accordingly, no precise definition of necessity can be made." Restatement, Property, § 476, comment g, p. 2983, *et seq.* (Italics ours.) See, also, Restatement, Property, § 476, comment i, p. 2987.

■ The west driveway has extended from First avenue to the south side of the former carriage house for many years. It ends in a "turn around" which is approximately one hundred and twenty feet from Riverside avenue and forty-five feet in elevation above it. It has been in constant use. The trial judge pointed out in his memorandum opinion that Mr. Adams (appellant) meticulously investigated the property before purchasing, he knew of the carriage house

apartments and the west driveway serving it, and stated that he did

"   .   .   .   not believe as, apparently, Mr. Adams would have him do so, that he was ignorant of any reservations or attempted reservations for easements, especially, on the west side of said property."

There is no evidence that there ever had been a driveway to the carriage house apartments from Riverside avenue. It is apparent from the many photographs in evidence that if such a driveway could be constructed, it could only be done at great cost and would not be a satisfactory substitute for the present driveway serving the Cullen apartments.

The continuous prior use of the driveway, the degree of proof of its necessity for the enjoyment of the dominant estate, and the conveyee's knowledge of its existence, are sufficient in this case to establish an easement by implication by implied reservation.

The judgment is affirmed.

GRADY, C. J., SCHWELLENBACH, HILL, and DONWORTH, JJ., concur.