[No. 13352-4-III.   Division Three.   April 6, 1995.]

FOSSUM ORCHARDS, *Respondent*, v. DANIEL PUGSLEY, SR., ET AL, *Appellants*.

*Theodore A. Roy* and *Roy & Pell,* for appellants.

*Robert E. Lawrence-Berrey, Jr.,* and *Peters & Fowler,* for respondent.

MUNSON, J. — Daniel Pugsley, Sr., and Daniel Pugsley, Jr., appeal the judgment determining the existence of an easement across their property for a buried pipeline which delivers water from the Lower Wapatox Ditch Company irrigation system to property owned by Fossum Orchards, Inc. They contend the court erred in determining they purchased the property subject to an implied easement. We affirm.

Delva and Ora Mae Harris owned a 5-acre parcel of land in Yakima County. They also owned 3.5 shares in the Wapatox Ditch Company. The ditch company maintained a ditch across the southern end of the property and a weir box for delivering water to the Harris property and a property across the road known as Kershaw Orchards.

In 1978, the Harrises filed a short plat dividing their property into three lots. The plat document bears a notation indicating the property is part of the Selah-Naches water district and subject to reservations and obligations concerning irrigation water easements.[1] At the time of the short plat, the Harrises exchanged their Wapatox share certificate for three separate certificates for water shares proportionate to the size of the three lots. In 1983, the Harrises' neighbor

---

[1]Mark Robert, a member of the board of the Wapatox Ditch Company, testified the property is within the boundary of Wapatox, not the Selah-Naches, Irrigation District.

Mark Robert helped construct a ditch and install pipe the entire length of the property to deliver water from the weir.

In February 1985, the Harrises sold a .5-acre lot (lot 1) to George Arthur. Lot 1 is the southernmost of the three lots, and the weir is located on it. The deed to Mr. Arthur does not reference any easement for the benefit of the remaining property (lots 2 and 3) to access the weir.[2] The Harrises had the certificate representing .35 shares of Wapatox Ditch Company transferred to Mr. Arthur.

In May 1986, the Harrises sold a 2.5-acre lot (lot 2), located immediately north of lot 1, to Daniel Pugsley, Jr. They had a certificate for 1.75 Wapatox shares issued to Mr. Pugsley, Jr. The deed does not refer to an easement across lot 1 for the benefit of lot 2 to access the weir, or to an easement for the benefit of the remaining property to access the weir. At the time of that sale, cherry trees were growing on lot 2. Mr. Pugsley, Jr., used the existing pipe and water from the weir to water his orchard. In the course of repairing it, Mr. Pugsley, Jr., discovered the pipe continued north onto lot 3 and disconnected it. Although Mr. Pugsley, Jr., knew at the time of purchase that lot 2 was irrigated, he did not see any evidence of irrigation on lot 3.

In October 1988, the Harrises sold the remaining 2 acres (lot 3) to Gregory Williams, who conveyed it to Fossum Orchards in December 1988. Although this part of the property had been used for a cherry orchard until the early 1970's, there was no evidence it had been irrigated since that time. The remaining 1.4 Wapatox shares were transferred to Mr. Williams and then to Fossum. The deeds do not refer to any easement across lots 1 and 2 for the benefit of

---

[2]The Harrises signed a water agreement with Mr. Arthur, which granted the Harrises an easement across lot 1 for the purpose of furnishing water from a well for domestic purposes. The real estate contract between the Harrises and Mr. Arthur references this agreement as well as a water agreement with the McDowells, owners of property west of lot 1. The real estate contract between the Harrises and Mr. Pugsley, Jr., refers to the Arthur and McDowell water agreements and the rights of an unnamed landowner to the west of lot 2 to use the domestic water cistern. None of the parties contends any of these agreements or easements provides an express easement for the benefit of lot 3 to access the Wapatox weir on lot 1.

lot 3. Mr. Fossum owned other property in the area, however, and was aware of the existence of the weir on lot 1 and the pipe for delivering water to lot 3.

In 1991, Mr. Arthur conveyed lot 1 to Daniel Pugsley, Sr., father of Daniel Pugsley, Jr.; the .35 Wapatox shares were transferred to Mr. Pugsley, Sr. In 1992, Fossum began planting an orchard on lot 3 and asked Mr. Pugsley, Jr., for permission to connect to the water system. After initially indicating agreement, Mr. Pugsley, Jr., later withdrew permission. This lawsuit followed.

The Pugsleys contend the court erred in finding an implied easement because there was no evidence the irrigation system had been used for the benefit of lot 3. The factors relevant to establishing an implied easement are unity of title and subsequent separation, prior apparent and continuous quasi-easement for the benefit of one part of the estate to the detriment of another, and a certain degree of necessity for the continuation of the easement. *Hellberg v. Coffin Sheep Co.*, 66 Wn.2d 664, 404 P.2d 770 (1965); *Roberts v. Smith*, 41 Wn. App. 861, 707 P.2d 143 (1985).

The first and third factors — unity of title and subsequent severance, and reasonable necessity — are essential for creation of an implied easement. *Evich v. Kovacevich*, 33 Wn.2d 151, 204 P.2d 839 (1949); *Bays v. Haven*, 55 Wn. App. 324, 777 P.2d 562 (1989). The existence of an apparent and continuous quasi-easement, and necessity for continuation of the easement, are considered in determining whether there was an intent to create an implied easement. *Roberts*, at 865. Although prior use is a circumstance contributing to the implication of an easement, if the land cannot be used without the easement without disproportionate expense, an easement may be implied on the basis of necessity alone. *Adams v. Cullen*, 44 Wn.2d 502, 268 P.2d 451 (1954).

Pipelines need not be visible to be apparent, particularly if appliances connected therewith are obvious. *Berlin v. Robbins*, 180 Wash. 176, 38 P.2d 1047 (1934). An artificial structure such as a pipe or other fixture may, without more, constitute an apparent or continuous easement. *Berlin*, at

184; *see Hutcheson v. Sumrall*, 220 Miss. 834, 72 So. 2d 225 (1954).

The pipe for conveying water to the Harris property and Kershaw Orchards, and the weir box from which the water was drawn, were in existence at the time the Harrises severed the property and conveyed lots to Mr. Arthur and Mr. Pugsley, Jr. The unity and severance element is amply established by the record; the court, in an unchallenged finding, determined no alternative source of water was reasonably available. The court correctly determined the Harrises and their purchasers intended to create an implied easement for the benefit of lot 3.

The Pugsleys contend any easement was extinguished because it was not recorded or referenced in subsequent conveyance documents.

Other jurisdictions have divided on the question of whether a purchaser of land without notice takes free of an easement by implication. *See Crescent Harbor Water Co. v. Lyseng*, 51 Wn. App. 337, 346, 753 P.2d 555 (1988); A.M. Swarthout, Annotation, *Extinguishment of Easement by Implication or Prescription, by Sale of Servient Estate to Purchaser Without Notice*, 174 A.L.R. 1241 (1948). No Washington case appears to have addressed the issue. Our courts have recognized, however, that a purchaser who has knowledge sufficient to cause a prudent person to make inquiry, where such inquiry would lead to the discovery of the equitable rights of others affecting the property, is charged with actual knowledge and is not a good faith purchaser without notice. *Miebach v. Colasurdo*, 102 Wn.2d 170, 175-76, 685 P.2d 1074 (1984); *Kirk v. Tomulty*, 66 Wn. App. 231, 831 P.2d 792, *review denied*, 120 Wn.2d 1009 (1992).

Mr. Pugsley, Sr., testified he was aware of the water box on the lot he purchased. The plat filing referred to the presence of irrigation easements on the property. Mr. Pugsley, Jr., his son and adjacent property owner, knew of the irrigation pipe extending to lot 3 by reason of having disconnected it in 1986. The owner of adjacent property, Mr. Roberts, knew of the presence of irrigation pipe extending from lot 1

to lot 3. The evidence supports the court's finding Mr. Pugsley, Sr., had sufficient notice to be charged with knowledge of the easement. Mr. Pugsley, Jr., having purchased the property directly from the Harrises, and the implied easement having arisen at the time of his purchase, is not a subsequent purchaser; this issue does not apply to him.

The Pugsleys contend the court erred in awarding Fossum the use of the pump Mr. Pugsley, Jr., purchased from the Harrises, and in granting Fossum exclusive continuous use of the water for 60 hours each week.

■ With respect to the pump, in *Gowing v. Lehmann*, 98 N.H. 414, 101 A.2d 463 (1953), a written deed granting an easement to take water from a well on the servient property did not grant to the dominant property the right to have a pump maintained and operated for its benefit; the owner of the dominant property was required to install his own pump. Here, the court ruled Fossum would be required to operate and contribute to the maintenance of the pump. The record does not indicate it would be feasible or acceptable to the Pugsleys for Fossum to install its own pump. There was no error.

With respect to the allocation of water, in the absence of evidence the parties may all simultaneously withdraw water; the court did not err in allocating each party a proportional share of each week during which that party would be entitled to use of the water. Nor is there evidence the manner of allocation selected by the court was unreasonable.

■ The Pugsleys contend the court erred in finding the shares of Wapatox stock were appurtenant to the land. Although the court did not expressly so find, appurtenance is implicit in the court's findings of fact. Generally, a company share represents a water right which is appurtenant to the stockholders' land unless it has been sold for use on other land. *Berg v. Yakima Vly. Canal Co.*, 83 Wash. 451, 145 P. 619 (1915). The evidence in the present case was that the Harrises transferred the water certificates to the new owners when they sold the property, evidencing their intent to make the water rights appurtenant. This evidence sup-

ports the court's finding the water right was appurtenant to Fossum's property.

Affirmed.

THOMPSON, C.J., and SWEENEY, J., concur.

Reconsideration denied May 5, 1995.

Review denied at 127 Wn.2d 1011 (1995).