**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| YOUNG S. KIM and YONG S. KIM, a marital community, | ) ) ) | NO. 69274-7-I |
| | ) | DIVISION ONE |
| Appellants, | ) ) | |
| v. | ) ) | |
| KYUNG-RAK and JAE SOOK KIM, a marital community, | ) ) ) | UNPUBLISHED OPINION |
| | ) | FILED: October 28, 2013 |
| Respondents. | ) | |

LAU, J. — This case involves an implied easement dispute between two businesses over use of a shared parking lot. After a three-day bench trial, the trial court determined that Kyung-Rak and Jae Sook Kim (Market Kims) established an implied and/or prescriptive easement over Young and Yong Kim's (Restaurant Kims) property to allow for patron parking and movement of delivery and service trucks. [1]

---

[1] The parties are not related despite having the same surname. To avoid confusion at trial and on the record, both parties' counsel and the trial court referred to plaintiffs/appellants as "Restaurant Kims" and defendants/respondents as "Market Kims." For clarity, we use those same references here.

The court also awarded injunctive relief requiring Restaurant Kims to remove a "privacy fence" that blocked the easement. Restaurant Kims challenge numerous trial court findings of fact and conclusions of law. Because (1) the trial court demonstrated it had ample memory of the trial evidence justifying its findings and conclusions and (2) substantial evidence supports the findings of fact and the findings support the conclusions of law regarding implied easement, we affirm.

## FACTS[2]

Market Kims own and operate a small market on a parcel of land (the market parcel) in Birch Bay, Whatcom County. The market has operated on the market parcel in one form or another for over 50 years. Restaurant Kims own the adjacent property (the restaurant parcel), which contains several buildings. The primary structure is used for a teriyaki restaurant business. The two parcels share a parking lot. The parking lot has a single access route over the market parcel.

Both parcels were originally owned by the Vogt family. In the 1920s, the market parcel was known as the "Bay Center Resort" and had a gas station pump, a small market, and vacation rental cottages that were located on what is now the restaurant parcel. In approximately 1961, the old Bay Center Resort structure was torn down and the current market structure was built. At that time, the structure that now houses the teriyaki restaurant on the restaurant parcel did not yet exist.

In 1965 and 1966, William Vogt acquired common ownership of both parcels. In approximately 1972, he added a rear loading dock and annexes used for garages or

---

[2] Restaurant Kims raise 37 assignments of error, 14 of which relate to specific findings of fact. See Appellant's Br. at 4–8. The findings of fact cited in this section were neither assigned as error nor argued in the briefing.

storage bays to the market. Market vendors routinely used the loading dock and storage bays to deliver goods and services to the market. This required delivery trucks to cross over what is now the property line into what is now a portion of the restaurant parcel's parking lot. Numerous trial witnesses testified that vehicles accessing the market parcel "use, and have for decades used, that portion of the parking lot located on the Restaurant Parcel to maneuver and park."

Common ownership of the market parcel and restaurant parcel ended in 1978 when the Vogts quitclaimed the restaurant parcel to their daughter, Penny Beebe. No formal easement was executed and the same pattern of restaurant parcel parking lot use described above continued during Beebe's ownership. Beebe and her husband built the structure later operated by Restaurant Kims as a teriyaki restaurant. The Beebes lived in the building and operated a gift shop and managed nearby rental cottages that they later sold.

In 1996, the Beebes sold the restaurant parcel to Restaurant Kims.[3] No formal easement was signed. In conjunction with the sale, the Vogts, then owners of the market parcel, granted Restaurant Kims an express easement allowing access over the market parcel. Even after the Beebes' sale and Market Kims' purchase of the market parcel from the Vogts in 1997, market patrons, vendors, and service providers continued to use the Restaurant Parcel's parking lot for ingress, egress, access, parking, and delivery of services and goods.

---

[3] Restaurant Kims assign partial error to this finding, but the only error assigned relates to the sale date. Because we need not address the prescriptive easement issue for reasons noted below, any error is immaterial.

Restaurant Kims filed a lawsuit in 2005 against several entities over recorded easements.[4] Those entities joined Market Kims as named defendants. Market Kims asserted implied and prescriptive easements over the disputed parking areas. After a three-day bench trial, the trial court issued a letter ruling concluding Market Kims established implied and prescriptive easements over the disputed parking areas. The court also ordered Restaurant Kims to remove the privacy fence and bollards Restaurant Kims installed in the easement area. Over two years later, the trial court entered its findings of fact and conclusions of law. The court denied Restaurant Kims' motions for new trial and reconsideration.

## ANALYSIS

### Standard of Review

We review the trial court's decision following a bench trial to determine whether the findings are supported by substantial evidence and whether those findings support the conclusions of law. Sunnyside Valley Irrigation Dist. v. Dickie, 149 Wn.2d 873, 880, 73 P.3d 369 (2003); Morgan v. Prudential Ins. Co. of Am., 86 Wn.2d 432, 437, 545 P.2d 1193 (1976). The label applied to a finding or conclusion is not determinative; we "will treat it for what it really is." Para-Medical Leasing, Inc. v. Hangen, 48 Wn. App. 389, 397, 739 P.2d 717 (1987). Substantial evidence is a quantum of evidence sufficient to persuade a rational and fair minded person that the premise is true. Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wn.2d 169, 176, 4 P.3d 123 (2000). In determining the sufficiency of evidence, we need only consider evidence favorable to the prevailing party. Bland v. Mentor, 63 Wn.2d 150, 155, 385 P.2d 727 (1963). We

---

[4] Those entities are not involved in this appeal.

-4-

defer to the trial court's assessment of witness credibility and evidence weight. In re Welfare of Sego, 82 Wn.2d 736, 739-40, 513 P.2d 831 (1973). We will not substitute our judgment for that of the trial court, even if we might have resolved the factual dispute differently. Dickie, 149 Wn.2d at 879-80. Unchallenged findings of fact are verities on appeal. In re Estate of Jones, 152 Wn.2d 1, 8, 93 P.3d 147 (2004); RAP 10.3(g).

An unchallenged conclusion of law becomes the law of the case. King Aircraft Sales, Inc. v. Lane, 68 Wn. App. 706, 716, 846 P.2d 550 (1993). We review conclusions of law de novo. Dickie, 149 Wn.2d at 879-80. But when an appellant challenges conclusions of law not based on the law itself, but rather claiming that the findings do not support the court's conclusions, appellate review is limited to determining whether the trial court's findings are supported by substantial evidence and, if so, whether those findings support the conclusions of law. Am. Nursery Prods, Inc. v. Indian Wells Orchards, 115 Wn.2d 217, 222, 797 P.2d 477 (1990); Willener v. Sweeting, 107 Wn.2d 388, 393, 730 P.2d 45 (1986).

### Findings and Conclusions

#### Delay

Restaurant Kims claim the trial court's delayed entry of findings and conclusions warrants de novo review.[5] Market Kims respond that the trial court's accurate memory of the trial facts renders its findings and conclusions valid.

---

[5] The court's ruling found in favor of Market Kims on their implied and prescriptive easement claims.

CR 54(e) provides that the prevailing party shall prepare and present a proposed form of order or judgment no later than 15 days after the court's decision, unless otherwise directed by the court. Restaurant Kims cite no Washington authority holding that, as a matter of law, substantial delay in entering findings and conclusions requires de novo review of the entire record.[6] Similar rules in the criminal context require a showing of prejudice before delayed findings warrant a remedy, including dismissal. Cf. State v. Royal, 122 Wn.2d 413, 423, 858 P.2d 259 (1993) (juveniles); State v. Cannon, 130 Wn.2d 313, 330, 922 P.2d 1293 (1996) (trial court's failure to file). Restaurant Kims establish no prejudice based on the court's tardy entry of the findings and conclusions. Nor is there any indication that the findings and conclusions are unreliable. The record here shows the trial court's vivid memory of the trial and the testimony. The trial judge

---

[6] Restaurant Kims quote Keller v. U.S., 38 F.3d 16, 21 (1st Cir. 1994), to argue that "Excessive delay in the entry of findings of fact and conclusions of law require, on appeal, 'de novo scrutiny of the entire record with a view to whether the prolonged delay in reaching a decision rendered the trial court's findings of fact unreliable . . . .'" Appellant's Br. at 18. But Keller involved "an unprecedented eight-year delay between trial and the entry of judgment, coupled with the trial judge's failure to refresh his recollection through recourse to a complete trial transcript prior to making findings of fact . . . ." Keller, 38 F.3d at 20. Here, the delay was two years, not eight. And the trial court described its review of the record and testimony and stated it had a vivid memory of the trial.

Restaurant Kims also cite State v. Portomene, 79 Wn. App. 863, 864-65, 905 P.2d 1234 (1995) to argue that Market Kims "simply tailored the findings to meet their burden on appeal." Appellant's Br. at 18. Restaurant Kims refer to the general rule in criminal cases that where the State fails to prepare written findings and conclusions until after the defendant files an opening brief on appeal, we must carefully consider whether the proposed findings were tailored to meet issues raised in the defendant's appellate brief. Portomene, 79 Wn. App. at 864-65. The true problem arises when findings are entered after an appeal has been filed and it is clear that the prevailing party tailored or altered the proposed findings and conclusions "to meet issues and arguments raised by [the losing party] in his brief to the Court of Appeals." Cannon, 130 Wn.2d at 330. This rule is inapplicable. Market Kims proposed findings and conclusions before any appeal was filed.

refreshed his memory by reviewing the trial transcripts, his trial notes, admitted exhibits, the parties' trial notebooks, and court files. The claim fails.

### Challenged Findings of Fact 5, 7, 8, 10, 18, 23, 25, 30, 31, 34, 36, 38, 39, 40

Market Kims contend that most of the challenged findings are inadequately briefed and argued. We agree.

"RAP 10.3 requires appellant to present argument to the reviewing court as to why specific findings of fact are in error and to support those arguments with citation to relevant portions of the record." In re Disciplinary Proceeding Against Whitney, 155 Wn.2d 451, 466, 120 P.3d 550 (2005); see also RAP 10.3(g) ("A separate assignment of error for each finding of fact a party contends was improperly made must be included with reference to the finding by number."). When challenges to findings of fact are insufficiently briefed, we decline to address those challenges and consider the findings verities on appeal. Whitney, 155 Wn.2d at 467; United Dev. Corp. v. City of Mill Creek, 106 Wn. App. at 688. See also Valley View Indus. Park v. City of Redmond, 107 Wn.2d 621, 630, 733 P.2d 182 (1987) (city assigned error to 21 of the trial court's findings of fact, but its opening brief mentioned only two of the findings to which it assigned error; court held, "Such discussion is inadequate for all except the two mentioned findings. A party abandons assignments of error to findings of fact if it fails to argue them in its brief.") (emphasis added); Seattle Sch. Dist. No. 1 v. State, 90 Wn.2d 476, 488, 585 P.2d 71 (1978) ("Appellants have assigned error to 9 of 698 findings of fact. Except for number 172 and 446 no other finding is again referred to in appellants' brief by identifiable number or otherwise. Three other findings are mentioned without actual

argument in the reply brief. <u>Since there is no further argument, discussion or reference to these findings, we deem them abandoned</u>."). (Emphasis added.)

Here, findings 5, 7, 10, 18, 25, 30, 36, 39, and 40 are inadequately briefed and argued. Thus, these claimed factual errors are abandoned and constitute verities on appeal.[7] <u>Whitney</u>, 155 Wn.2d at 467. We address Restaurant Kims' remaining fact challenges (findings 8, 23, 31, 34, and 38) below for substantial evidence.

Findings 8 and 34 address use of the shared parking lot and feasibility of access to the parking spots and loading dock on the market's south side. Substantial evidence supports these findings. <u>See</u> Report of Proceedings (RP) (Dec. 1, 2009) at 101-03 (testimony regarding patron use of shared parking lot); RP (Dec. 1, 2009) at 140-48, 151-72 (James Perry and Gill Brackinreed testimony); RP (Dec. 2, 2009) at 199-263 (Jeff Vanderyacht testimony); RP (Dec. 2, 2009) at 267-72 (Sung-Soo Kim testimony); Ex. 8A, Ex. 32 Tabs 23 and 24.

Finding 38 states that "granting an easement as depicted and legally described in Exhibits 'A' and 'B' to these findings is commensurate with the evidence presented at trial . . . [and] represents nothing more than what was well-established at trial as the

---

[7] Nonetheless, we note that the record here overwhelmingly supports the findings relevant to the court's determination regarding implied easement. In addition to the unchallenged findings and witness testimony described above and below, see exhibit 32, tabs 23 and 24; exhibits 7, 8, 8A, 26C, 26K, 26O, 26P, 26DD, 26EE, 31A, 31C; RP (Dec. 1, 2009) at 94-100, 101-04, 106-10, 118-19, 131, 140-48, 151-72, 178-87; RP (Dec. 2, 2009) at 270-72; RP (Dec. 7, 2009) at 378-79, 381, 422-23, 426-27, 455, 501-02.

long-term use of the Market and Restaurant Parcels." Overwhelming evidence supports this finding.[8]

Finding 23 states:

In 1984, a lease was recorded (Exhibits 32-18) wherein William and Blanche Vogt leased the market business to Wolten & Montfort, Inc. This lease demonstrates that the use of the Restaurant Parcel parking lot to access parking, the loading dock, and storage bays, was essential to the operations of the market on the Market Parcel.

Restaurant Kims challenge this finding related to specific provisions in the 1984 lease agreement between lessors Vogt and lessee Wolten & Montfort Inc. for use of the market parcel. The lease was executed after common ownership ceased and set a lease term of 20 years. Lease paragraph 25 provides, "All commercial vehicles should be encouraged not to block traffic to the condos, the cabins or gift shop. They are to be parked on leased property." Lease paragraph 30 states that market patrons may park on the "Landlubber Gift Shop property," which trial testimony established is the Restaurant Parcel.

The parties dispute the significance of these quoted provisions. The trial court, acting in its fact finder role, gave proper weight to lease provisions that show the prior continued use of the shared parking lot on the question of intent. The trial court determined that no lease provision prohibits Market Parcel lessees' use of the Restaurant Parcel parking lot or prohibits blocking traffic temporarily while moving

---

[8] Restaurant Kims also challenge finding 31, which states, "Plaintiff Kim, by his testimony and by description of his actions, demonstrated that he did not give permission for the use as described herein, by the Market Parcel and such use was adverse. This adversity is further established by operation of law, that any permission granted by a predecessor such as Beebe is automatically revoked upon transfer of title." This finding specifically relates to the prescriptive easement issue. Because we do not reach that issue, we need not address finding 31.

delivery trucks in and out. We decline to reweigh the evidence or substitute our judgment for that of the trial court. Dickie, 149 Wn.2d at 879-80. Substantial evidence supports finding 23.

Implied Easement

Restaurant Kims challenge the trial court's determination that an implied easement existed over a portion of the Restaurant Parcel's parking lot. Market Kims respond that substantial evidence supports the trial court's findings and the findings support its conclusion on this issue.

While easements are usually created expressly in a written instrument, the law also recognizes implied easements in some situations. See 17 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE, REAL ESTATE: PROPERTY LAW § 2.4, at 89 (2d ed. 2004). "Easements by implication arise by intent of the parties, which is shown by facts and circumstances surrounding the conveyance." Roberts v. Smith, 41 Wn. App. 861, 864, 707 P.2d 143 (1985). The factors relevant to establishing an implied easement are (1) former unity of title and subsequent separation, (2) prior apparent and continuous quasi easement[9] for the benefit of one part of the estate to the detriment of another, and (3) a certain degree of necessity for the continuation of the easement. Adams v. Cullen, 44 Wn.2d 502, 505, 268 P.2d 451 (1954); MacMeekin v. Low Income Hous. Inst., Inc., 111 Wn. App. 188, 195, 45 P.3d 570 (2002). Unity of title and subsequent separation is the only absolute requirement. Roberts, 41 Wn. App. at 865. The other two factors are merely "aids to construction in determining the cardinal

_____

[9] A "quasi easement" refers to the situation where one portion of property is burdened for the benefit of another portion, which would be a legal easement if different persons owned the two portions of property. Adams, 44 Wn.2d at 504.

consideration—the presumed intention of the parties as disclosed by the extent and character of the user, the nature of the property, and the relation of the separated parts to each other." Adams, 44 Wn.2d at 505-06. In Rogers v. Cation, 9 Wn.2d 369, 376, 115 P.2d 702 (1941), our Supreme Court held, "[T]he presumed intention of the parties, is the prime factor in determining whether an easement by implication has been created." "[W]e pointed out that the rule is not a hard and fast one, and that the presence or absence of either or both of these requirements is not necessarily conclusive." Adams, 44 Wn.2d at 505 (citing Rogers, 9 Wn.2d at 376).

Unity of title and subsequent separation is met because Restaurant Kims acknowledge that the two parcels were formerly joined and then separated and fail to challenge the trial court's related conclusions of law 2 and 3. Apparent and continuous quasi easement is also met because Restaurant Kims fail to address this factor in their briefs despite assigning error to related conclusions of law and the judgment.[10] An issue not briefed is waived. RAP 10.3(a)(6); Kadoranian v. Bellingham Police Dep't, 119 Wn.2d 178, 191, 829 P.2d 1061 (1992). At oral argument, Restaurant Kims also

---

[10] As to this factor, Stoebuck and Weaver observed: "[B]efore the conveyance, there was a usage existing between the parcel conveyed and the parcel retained that, had the two parts then been separately owned, could have been an easement appurtenant to one part." 17 STOEBUCK & WEAVER, supra, § 2.4, at 90. This element is also referred to as "prior continuous use." McPhaden v. Scott, 95 Wn. App. 431, 438, 975 P.2d 1033 (1999). The purpose of the "apparent" requirement is to show the easement was within the grantor and grantee's contemplation. 17 STOEBUCK & WEAVER, supra, § 2.4 at 92. The evidence shows that when the Vogts divided the property and quitclaimed the restaurant parcel to Penny Beebe, the Vogts and the Beebes knew that portions of the restaurant parcel were used to facilitate deliveries and customer access to the market parcel.

conceded no genuine challenge to this factor.[11]  Indeed, overwhelming record evidence

supports the prior continuous use of the shared parking lot as discussed below.  The

trial court's findings on this point are either unchallenged or insufficiently argued on

appeal.  Thus, they are verities on appeal.

We next turn to the necessity element.  The parties agree that any easement that

existed over Restaurant Kims' parking lot was established by reservation, not by grant.[12]

They dispute whether the "reasonable necessity" or "strict necessity" standard applies to

an easement implied by reservation.  Citing Adams, Restaurant Kims contend that

Washington courts require claimants to show strict necessity when asserting an implied

easement by reservation.  Market Kims agree that an implied easement by reservation

requires a greater degree of necessity than an implied easement by grant, but they

argue Adams establishes no strict necessity requirement.

Adams involved facts similar to those in the present case.  In Adams, Cullen

asserted an implied easement over Adams's property.  Adams, 44 Wn.2d at 503.  The

Adams and Cullen properties were originally one parcel, with the "Strahorn" residence

located on what later became the Adams property and the carriage house to the

Strahorn residence located on what later became the Cullen property.  Adams, 44

Wn.2d at 503.  At the time of trial, the two buildings had become the "Strahorn

Apartments" and the "Cullen Apartments," respectively.  Adams, 44 Wn.2d at 503.

---

[11] The panel asked at oral argument, "It appears that your only true challenge is
to the third factor, necessity.  Is that right?"  Counsel responded, "That's correct."

[12] An implied easement by reservation arises when the servient estate is severed
and conveyed first (and, thus, the original common owner retains an easement for the
benefit of the dominant estate retained by him).  Adams, 44 Wn.2d at 505.

Access to the Cullen Apartments consisted of a driveway located on the Adams property. Adams, 44 Wn.2d at 504. The evidence showed that the driveway over the Adams property had been used for access to the Cullen property since the driveway was built, and no evidence showed that any other driveway had ever existed. Adams, 44 Wn.2d at 504, 510. Although it was possible for the Cullen property to gain its own access by building another driveway, the evidence showed that the cost to do so was significant and it would not be a satisfactory substitute for the existing driveway. Adams, 44 Wn.2d at 510.

Adams specifically addressed, "What degree of necessity must be established by proof?" for an implied easement by reservation. Adams, 44 Wn.2d at 506. The court explained:

> While there is some conflict in the cases as to the degree of necessity required to create an easement by implied grant, the prevailing rule, and the one adopted by this court, is that the creation of such an easement does not require absolute necessity, but only reasonable necessity. Evich v. Kovacevich, 1949, 33 Wash.2d 151, 157, 204 P.2d 839, and cases cited. This court said, in Berlin v. Robbins, [180 Wash. 176, 38 P.2d 1047 (1934)], dealing with an easement by implied grant,
> "The test of necessity is whether the party claiming the right can, at reasonable cost, on his own estate, and without trespassing on his neighbors, create a substitute." [Berlin,] 180 Wash. at 189].
> Since the purpose of the rule is to aid in determining the presumed intention of the parties, it may be argued that the presumption in favor of an implied reservation to the grantor should require no greater degree of necessity than in the case of an implied grant. The authorities, however, are not in accord. . . .
> For an easement by implied reservation, the weight of authority requires a higher degree of necessity than for an implied grant. The usual term is "strict" necessity.
> In Schumacher v. Brand, 1913, 72 Wash. 543, 547, 130 P. 1145, 1147 (a case involving an easement by implied grant), this court said:
> "The courts generally hold that there is a difference between an implied reservation of an easement and the grant of an easement by implication. The distinction is put upon the ground that the former is in derogation of the deed and its covenants, and stands upon narrower ground than a grant."

It is not difficult to state that there must be "reasonable" necessity for the existence of an easement by implied grant and "strict" necessity for the existence of an easement by implied reservation. The difficulty arises when the trier of the facts must determine whether the facts satisfy the corresponding degree of necessity required by the rule.

The authors of the Restatement have avoided use of the term "strict necessity," but [the Restatement] indicates that, in the absence of other considerations, a higher degree of necessity is needed for an easement by implied reservation than is needed for an easement by implied grant.

Adams, 44 Wn.2d at 507-08 (some citations omitted) (emphasis in original). Adams concluded that in light of the history of use and the cost and inconvenience of the alternative, the claimant established sufficient "necessity" justifying an implied easement by reservation. Adams, 44 Wn.2d at 510.

In their authoritative real property treatise, Professors Stoebuck and Weaver discuss Adams:

Earlier in this section it was suggested that there is a special problem with easements implied by "reservation," those in which it is claimed the easement exists in favor of the grantor rather than the grantee. Particularly in older American decisions, it was doubted that such implied easements were allowed, or at least they were looked upon less favorably than were easements by implied grant. The underlying problem is that, when the grantor seeks to establish by implication an easement in his favor that was not expressly reserved in his deed, he seeks to derogate from his own grant. Washington's position, based upon the decision in Adams v. Cullen, seems to be that an easement by implied reservation may exist, and did exist in Adams, but a higher degree of necessity for it is required than with an easement by implied grant. The court mused over whether "strict" necessity should be required but ultimately did not appear to adopt that word or any precise definition of the higher degree. An implied reserved easement for a driveway was held to exist, though it appears it was not impossible, but only impractical and expensive, to build a driveway over another route. Probably the best that can be said is that, if a higher degree of necessity is required in Washington for a reserved implied easement than for one by implied grant, the question depends more upon the facts of a particular case than upon some general, abstract test.

17 STOEBUCK & WEAVER, supra, § 2.4, at 92-93 (emphasis added) (footnotes omitted).

Restaurant Kims' reliance on Adams is misplaced. Adams adopted no strict necessity standard. The Adams court noted that necessity and prior use are counterbalancing factors. With implied easements, the stronger the evidence of prior use during common ownership, the less necessity is required, and vice versa. Adams, 44 Wn.2d at 509 (quoting RESTATEMENT OF PROPERTY § 476 cmt. g at 2983). Adams establishes that even assuming a "higher degree of necessity" to prove an implied easement by reservation, the claimant need not show that alternative means of ingress or egress are impossible. Impracticality is enough.[13] Adams, 44 Wn.2d at 510 ("It is apparent from the many photographs in evidence that if [an alternative] driveway could be constructed, it could only be done at great cost and would not be a satisfactory substitute for the present driveway. . . .").

In Fossum Orchards v. Pugsley, 77 Wn. App. 447, 892 P.2d 1095 (1995), Division Three of this court applied a "reasonable necessity" or "certain degree of necessity" standard in addressing an easement implied by reservation. Fossum involved a five-acre parcel of land originally owned by Delva and Ora Mae Harris. The southern end of the property contained a ditch and a weir box for delivering water to the Harris property. Fossum, 77 Wn. App. at 449. In 1978, the Harrises split the land into three lots. Fossum, 77 Wn. App. at 449. In 1983, they installed pipe the entire length of the property to delivery water from the weir. In 1985, they sold the southernmost lot

---

[13] Restaurant Kims cite Wreggitt v. Porterfield, 36 Wn.2d 638, 640, 219 P.2d 589 (1950) for the proposition that "'necessity must be of such a nature as to leave no room for doubt of the intention of the parties.'" Appellant's Br. at 21. Wreggitt preceded Adams, and Adams distinguished it on the basis that the court there rendered its decision on a theory of easement by implied grant. Adams, 44 Wn.2d at 506-07. Adams specifically noted, "[Wreggitt] is not authority for the rule that an easement cannot be created by implied reservation." Adams, 44 Wn.2d at 507.

(lot 1), which contained the weir, to a new owner. Fossum, 77 Wn. App. at 450. The Harrises sold lot 2 in 1986. The new owner discovered that the water pipe continued north onto lot 3 and disconnected it. Fossum, 77 Wn. App. at 450. The Harrises sold the remaining lot (lot 3) in 1988. Fossum, 77 Wn. App. at 450. Through another transaction, Fossum Orchards obtained title to lot 3. Fossum, 77 Wn. App. at 450. None of the deeds referred to any reserved easement across lots 1 and 2 for the benefit of lot 3. Fossum, 77 Wn. App. at 450-51. Although lot 3 had been used as a cherry orchard in the early 1970s, no evidence showed it had been irrigated since that time. Fossum, 77 Wn. App. at 450. Fossum began planting an orchard on lot 3 and asked the owner of lot 1 for permission to connect to the water system. Fossum, 77 Wn. App. at 451. Lot 1's owner refused, and Fossum sued, claiming an implied easement. Fossum, 77 Wn. App. at 451. The trial court found an implied easement in favor of lot 3 across lots 1 and 2 for access to the irrigation system located on lot 1. Fossum, 77 Wn. App. at 449.

On appeal, Division Three of this court referred to the necessity element as "a certain degree of necessity" and "reasonable necessity." Fossum, 77 Wn. App. at 451. The court affirmed the trial court's determination that the Harrises and their purchasers intended to create an implied easement for the benefit of lot 3, noting that (1) the weir box and pipe for conveying water to the Harris property existed at the time the Harrises severed the property and conveyed lots 1 and 2, (2) no alternative source of water was reasonably available, and (3) the failure to record or reference the easement in subsequent conveyance documents did not extinguish the easement because the

-16-

purchasers had sufficient notice to be charged with knowledge of the easement. Fossum, 77 Wn. App. at 452-53.

Even if we assume a more rigorous necessity standard applies, the trial court's findings leave no doubt this standard is met. Restaurant Kims' strict necessity claim to prove an implied easement by reservation is not persuasive.

Restaurant Kims next claim, "The necessity must have existed in 1978. The findings are devoid of any 1978 analysis. The trial court erroneously examined and found necessity in 2009." Appellant's Br. at 23-24. Restaurant Kims cite no authority for this contention in their opening brief.[14] Nonetheless, controlling authority holds to

_____

[14] In their reply, Restaurant Kims reiterate their argument that "[t]he necessity must have existed in 1978 at the time of the unity of title" and cite without elaboration or analysis Hellberg v. Coffin Sheep Co., 66 Wn.2d 664, 668, 404 P.2d 770 (1965)." Appellant's Reply Br. at 9. Hellberg is inapposite. Like the cases noted above, Hellberg analyzes necessity from the claimant's standpoint at the time he claims the easement. "The evidence fully substantiates the trial court's finding that there is no exit from land held by Hellberg and no road available other than the road in question (the old Coffin road) for convenient service to the areas leased by Coffin to Hellberg." Hellberg, 66 Wn.2d at 669.

In their statement of additional authorities, Restaurant Kims cite our decision in Veach v. Culp, 21 Wn. App. 454, 458-59, 585 P.2d 818 (1978). There, we determined that a deed establishing a railroad right of way across another landowner's property conveyed fee simple title in favor of the railroad. Then we addressed the landowner's alternative argument regarding implied easement:

In the alternative, the Veaches claim an easement by implied reservation across the right-of-way in order to reach their waterfront property and to enjoy riparian rights expressly reserved in the granting clause of the Zobrist deed. Riparian rights, such as access, swimming, fishing and boating, are conferred upon a property owner by virtue of the contiguity of his property to a body of water. The Veaches are riparian owners of their own waterfront strip of land and that part of the railroad right-of-way which abuts on the lake. That, however, does not give them the right to cross over the railroad's property to gain access to the shore unless they can show that the Zobrist conveyance implied an easement by reservation. Such an easement may arise when the party claiming it shows: (1) unity of title and subsequent separation, (2) an apparent and continuous quasi-easement existing for the benefit of the retained parcel to the detriment of the conveyed parcel during the unity of title, and (3) "strict" necessity

the contrary. "The test of necessity is <u>whether the party claiming the right</u> can, at reasonable cost, on his own estate, and without trespassing on his neighbors, create[s] a substitute." <u>Bays v. Haven</u>, 55 Wn. App. 324, 329, 777 P.2d 562 (1989) (emphasis added); <u>see also Adams</u>, 44 Wn.2d at 507 (same). Cases applying this test evaluate necessity from the standpoint of the party presently claiming the easement, not from the standpoint of the parties that originally created the easement. The higher the degree of necessity at the time the claimant demands the easement, the more likely the easement will be implied. <u>See Adams</u>, 44 Wn.2d at 510 (court evaluated necessity by referring to present-day usage and difficulty of constructing a substitute access route and concluded that constructing a new driveway could only be done at great cost and would not be a satisfactory substitute for claimant's use of the present driveway); <u>Bays</u>, 55 Wn. App. at 329 (affirming trial court's finding that claimant established reasonable

---

that the quasi-easement exist after severance. Adams v. Cullen, 44 Wash.2d 502, 268 P.2d 451 (1954). The necessity is to be determined from the conditions existing at the time of the conveyance. Unity of title and subsequent separation, which are absolute requirements, were satisfactorily proven by the Veaches. They failed in their burden of proof, however, as to the second and third characteristics of an easement by implied reservation. Although the presence or absence of either or both of these characteristics is not necessarily conclusive, their absence supports the trial court's finding that no easement was intended by the original parties to the conveyance.

<u>Veach</u>, 21 Wn. App. at 458-49 (emphasis added) (some citations omitted). Restaurant Kims use the emphasized language above to argue that strict necessity applies and must be determined at the time of conveyance. Our Supreme Court reversed <u>Veach</u>. <u>Veach v. Culp</u>, 92 Wn.2d 570, 599 P.2d 526 (1979). The court concluded the railroad's right-of-way was an easement, not fee simple title, and that the landowners could use the right-of-way in a manner that does not materially interfere with the railroad's use. The court stated, "Having determined that the railroad's right-of-way is one of easement, we need not reach the theory of implied easement advanced by the [landowners]." <u>Veach</u>, 92 Wn.2d at 575. The court concluded, "The decision of the Court of Appeals and the judgment of the trial court are reversed." <u>Veach</u>, 92 Wn.2d at 576.

Given our discussion above and below, Restaurant Kims' reliance on <u>Veach</u> is not persuasive.

-18-

necessity because their permit application was denied and direct access was impractical); Fossum, 77 Wn. App. at 452 (no alternative source of water reasonably available to claimant).

As discussed above, the court's findings regarding necessity are either unchallenged or insufficiently argued on appeal and nevertheless supported by substantial evidence (see findings of fact 29, 30, 32, 33, 34, 35, 38). For example, the court found that Market Kims' son, Sung-Soo Kim, credibly testified about the importance of using the Restaurant Parcel's parking lot for delivery of merchandise to the Market Parcel, garbage pickup, and customer parking. He noted it was very inefficient and inconvenient for the market to receive deliveries on the north side, and he stated that using the north side "man door" for market truck deliveries was "like trying to get an elephant through the front door." RP (Dec. 2, 2009) at 300, 312. He also testified that delivery and service truck drivers confirmed to him that using the loading dock is more efficient than the north side man door because inventory can be placed directly in the loading bay rather than hand-trucked through a man door.[15] RP (Dec. 2, 2009) at 275, 287. He estimated that paving and structural remodels to bring a loading dock to the market's north side would cost $300,000 to $350,000, a "significant financial burden" for his parents. RP (Dec. 2, 2009) at 296. Based on this unrebutted testimony, the trial court made the following unchallenged finding:

---

[15] Garbage truck driver Bruce Koch and Darigold truck driver Gill Brackinreed also testified. Brackinreed testified that while it might be easier to maneuver a truck on the north side, it had no receiving area and he never delivered there. RP (Dec. 1, 2009) at 163-64. Koch testified that it would be easier to maneuver a garbage truck in an open vacant lot as opposed to a busy parking lot. RP (Dec. 1, 2009) at 189. Neither witness testified about the logistics of running the market business or the cost of switching deliveries to the north side.

[S]witching deliveries of merchandise and services to the other side of the market would be cost prohibitive and an unsatisfactory substitute for the historical use of the loading dock area. It would require a large structural remodel of the building which would be very expensive. It also would require the Market Parcel to change its primary commercial access, which permitting agencies may not allow. Requiring the owners of the Market Parcel to use options other than the historical use would be substantially less convenient, both logistically and financially.[16]

We conclude substantial evidence supports the trial court's necessity findings and the findings support its conclusions of law.

## CONCLUSION[17]

Substantial evidence supports the court's findings and the findings support its conclusion that Market Kims established an implied easement by reservation across portions of Restaurant Kims' parking lot. We affirm.

WE CONCUR:

---

[16] The trial court also made an unchallenged finding that other witnesses corroborated Sung-Soo Kim's testimony "as to the general area of the Restaurant Parcel parking lot they had historically used to gain access to the Market Parcel." Overwhelming evidence in the record supports this finding and the court's other findings regarding historical use and necessity of the shared parking lot. See RP (Dec. 1, 2009) at 85-131 (Blair Beebe testimony); RP (Dec. 1, 2009) at 139-45 (Perry testimony); RP (Dec. 1, 2009) at 149-68 (Brackinreed testimony); RP (Dec. 1, 2009) at 174-92 (Bruce Koch testimony).

[17] Given our disposition, we need not address whether the trial court properly determined Market Kims established a prescriptive easement over the same area. Because the trial court properly determined an implied easement exists over portions of the Restaurant Parcel's parking lot, the court did not abuse its discretion in denying Restaurant Kims' motion to reconsider.

-20-